FINKLE AND ROSS, a Partnership; Juston Enterprises, Inc. Employees' Pension Plan; Joseph Neira; John Neira; Francisco Carvajal Navarez; Evan Levy and Carol Levy, Plaintiffs,

v.

A.G. BECKER PARIBAS, INC.; Mason Sexton and Michael Rose, Defendants.

Louise MOCKRIDGE, Plaintiff,

v.

PRESCOTT, BALL & TURBAN, and Erhardt Schmidt, Defendants.

Nos. 85 Civ. 1858 (DNE), 85 Civ. 2284 (DNE).

United States District Court, S.D. New York.

Dec. 2, 1985.

**1506**

Lippman & Lippman, New York City, for plaintiffs Finkle and Ross, a Partnership; Justin Enterprises, Inc. Employees' Pension Plan; Joseph Neira; John Neira; Francisco Carvajal Navarez; Evan Levy and Carol Levy; Harvey J. Lippman, David M. Hashmall & John T. Cushing, of counsel.

Bizar D'Alessandro & Shustak, New York City, for plaintiff Louise Mockridge; Gayle Sanders, of counsel.

Brown, Wood, Ivey, Mitchell & Petty, New York City, for defendant A.G. Becker Paribas, Inc.; Henry F. Minnerop and Deborah H. Frati, of counsel.

Gersten, Savage, Kaplowitz & Simensky, New York City, for defendant Mason Sexton; David O'Connor, of counsel.

Gordon Hurwitz Butowsky Weitzen Shalov & Wein, New York City, for defendants Prescott, Ball & Turban and Erhardt Schmidt; Allan R. Freedman, of counsel.

## OPINION AND ORDER

EDELSTEIN, District Judge:

These civil actions allege violations of Section 10(b) of the Securities Exchange

Act of 1934 ("1934 Act"), 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.-10b–5, promulgated thereunder. Plaintiffs in both actions also allege pendent state law claims for fraud and breach of fiduciary duty. Pursuant to Section 3 of the Federal Arbitration Act ("Arbitration Act"), 9 U.S.C. § 3, defendants in both actions have moved to compel arbitration of both the federal and state law claims. The court has consolidated these motions for the purpose of deciding common issues concerning the arbitrability of claims under the 1934 Act. The court finds that the federal and state law claims are arbitrable and that no other factors preclude arbitration in either instance. The motions are therefore granted.

### FACTUAL BACKGROUND

#### A. Finkle and Ross v. A.G. Becker Paribas, Inc.

In March 1983, plaintiffs Finkle and Ross, a partnership; Juston Enterprises, Inc. Employees' Pension Plan; Joseph Neira; John Neira; Francisco Carvajal Navarez; Evan Levy and Carol Levy ("Finkle and Ross") engaged defendant Mason Sexton ("Sexton") as their personal broker. Defendant Sexton was an employee of A.G. Becker Paribas, Inc. ("Becker"), a securities brokerage firm. By written agreement, plaintiffs authorized defendants to engage in discretionary trading in plaintiffs' account. The agreement contained the following arbitration clause ("Becker Arbitration Clause"):

> Any controversy between us arising out of, or relating to, any transaction for my account shall be settled by arbitration, in accordance with the rules, then obtaining, of either the National Association of Securities Dealers, Inc. or the Board of Arbitration of the New York Stock Exchange, as I may elect. If I do not make such election by registered mail addressed to you at your office within five (5) days after receipt of notification from you requesting such election, I authorize you to make such election on my behalf. Any arbitration hereunder shall be final, and judgment upon the award rendered may be entered in any court, state or

federal, having jurisdiction. By this agreement to arbitrate future controversies, I understand that I do not waive any rights I may have under the Federal securities laws for controversies arising under such laws.

Plaintiffs Finkle and Ross allege that defendants engaged in churning, the, "excessive and unsuitable trading for the purpose of generating commissions,". Plaintiffs bring this action for violations of Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. Plaintiff's further claim that defendants' acts constitute common-law fraud and breach of fiduciary duty.

#### B. Mockridge v. Prescott, Ball & Turban

In 1967, plaintiff Louise Mockridge, at the encouragement of defendant Erhard Schmidt ("Schmidt"), opened an account at Clark Dodge & Company, where Schmidt was a registered representative. In 1968, Schmidt became a broker with Vanden Broeck Liber & Co. and thereafter asked Mockridge to transfer her securities account to this firm. Vanden Broeck Liber & Co. subsequently became Prescott, Ball & Turban ("Prescott"). Plaintiff's contract with Schmidt and Prescott contained the following clause providing for arbitration of disputes arising out of the contract ("Prescott Arbitration Clause"):

> Any controversy between you [Prescott] and the undersigned arising out of or relating to any transaction of this or any other contract or the breach thereof, shall be settled by arbitration .... Any arbitration hereunder shall be before at least three arbitrators and the award of the arbitrator or a majority of them shall be final, and judgment upon the award may be entered in any court, state or federal, having jurisdiction.

Defendant Prescott's Memorandum of Law at 4.

Plaintiff Mockridge alleges that defendants engaged in a course of business which would operate as a fraud against any person. Plaintiff's Memorandum in Opposi-

tion at 7–9. Thus, plaintiff brings this action for violation of Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, as well as for common-law fraud.

Defendants in both actions contend that these claims fall within the scope of the respective arbitration clause and therefore have moved to compel arbitration and stay their respective action.

## DISCUSSION

### A. The Arbitrability of Claims Under the 1934 Act

Pursuant to the Supreme Court's decision in *Dean Witter Reynolds, Inc. v. Byrd,* —— U.S. ——, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the state law claims raised in these actions are arbitrable. The question remains, however, whether the claims brought under the Securities Exchange Act of 1934 may be submitted to arbitration along with the state law claims. The first step in this analysis is to determine whether Congress has evinced an intention to override a parties' agreement, that is, whether arbitration of a plaintiff's claim under the 1934 Act is precluded by legislative exigencies. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,* —— U.S. ——, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985).

In *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Supreme Court held that agreements to arbitrate claims arising under the Securities Act of 1933 ("1933 Act") were void. The court's determination was based on three interrelated provisions of the 1933 Act, sections 12(2), 22, and 14. Section 12(2) provides a "special right to recover for misrepresentation," 346 U.S. at 434–35, 74 S.Ct. at 186–87, and section 22 provides for state and federal jurisdiction and nationwide service of process for suits brought according to that right. Section 14 voids any "stipulation ... binding any person acquiring any security to waive compliance with any provision" of the 1933 Act. While noting the strong policy in favor of arbitration embodied in the United States Arbitration Act, 9 U.S.C. § 1 *et seq.,* ("the Arbitration Act") the Court nevertheless held that because an agreement to arbitrate is a stipulation and because a provision of the 1933 Act grants a private right of action, agreements to arbitrate claims under the 1933 Act are invalid. Weighing heavily in the Court's decision was its observation that the special right to recover for misrepresentation under section 12(2) is substantially different from the common-law action, *id.* at 431 n. 10, 74 S.Ct. at 184 n. 10, thus requiring the exercise of judicial direction to assure its effectiveness, *id.* at 436, 74 S.Ct. at 187.

Lower federal courts have extended *Wilko,* ruling that agreements to arbitrate claims under the 1934 Act are also void. *E.g., DeLancie v. Birr, Wilson & Co.,* 648 F.2d 1255 (9th Cir.1981); *Greater Continental Corp. v. Schechter,* 422 F.2d 1100 (2d Cir.1970). Recently, however, the basis for overriding the Arbitration Act by precluding the arbitration of claims under the 1934 Act has been subject to increasing criticism. *See Dean Witter Reynolds, Inc. v. Byrd,* 105 S.Ct. at 1244 (White, J., concurring); *McMahon v. Shearson/American Express, Inc.,* 618 F.Supp. 384, 387–89 (S.D.N.Y.1985) (Opinion). This criticism parallels greater support for arbitration generally as a means of resolving disputes more simply and expeditiously than in court. *See, e.g., Southland v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Moses H. Cone Memorial Hospital v. Mercury Constr. Co.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

In *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), the Supreme Court pointed out important differences in the 1934 and 1933 Acts and the effect those differences have on the applicability of *Wilko* to the 1934 Act. The Court noted that the 1934 Act contains no analogue to section 12(2) of the 1933 Act, which provided a special right of a private remedy to defrauded purchasers. *Id.* at 513, 94 S.Ct. at 2454. The Court contrasted the express right of action of the 1933 Act, which was determinative in the *Wilko* holding, with the implied right

that the lower courts have shaped under the 1934 Act. *Id.* at 513–14, 94 S.Ct. at 2454–55. Finally, the Court compared the broad jurisdiction of the 1933 Act, provided for in section 77v, with the restriction of forums found in section 78aa of the 1934 Act. *Id.* at 514, 94 S.Ct. at 2454.

In *Dean Witter Reynolds Inc. v. Byrd,* —— U.S. ——, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the Supreme Court reviewed the arguments raised in *Scherk.* 105 S.Ct. at 1240 n. 1. The Court declined to confront directly the issue of *Wilko's* applicability to claims under the 1934 Act. However, by raising the issue, the Court demonstrated an intention, albeit cautiously, to foster a reexamination of the assumptions that underlie lower-court rulings on this matter. In his concurrence to *Byrd,* Justice White was more direct. Rejecting the mechanical transplantation of *Wilko's* reasoning to the 1934 Act, the Justice reiterated the differences between the 1933 and 1934 Acts noted in *Scherk.* Justice White reasoned that because the right of action under section 10(b) and Rule 10b–5 was implied and not express, the proscription of section 78cc(a) against waiving any provisions of the Act was "literally inapplicable," *id.* 105 S.Ct. at 1244, to section 10(b) claims. The concurrence also noted that "*Wilko's* solicitude for the federal cause of action—the 'special right' established by Congress ...—is not necessarily appropriate where the cause of action is judicially implied and not so different from the common law action." *Id.* In concluding, Justice White expressed doubt as to the validity of lower-court holdings that apply the *Wilko* reasoning to claims under the 1934 Act. *Id.; see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,* 105 S.Ct. at 3355.

■ Convinced by the reasoning in Justice White's concurrence and by the recent decisions of the Supreme Court favoring arbitration, this court joins the growing ranks of district courts that have held that arbitration agreements are not void as to claims under the 1934 Act. *See McMahon v. Shearson/American Express, Inc.,* 618 F.Supp. 384, 387–89 (S.D.N.Y.1985) (Opinion); *Jarvis v. Dean Witter Reynolds, Inc.,* 614 F.Supp. 1146 (D.Vt.1985); *Driscoll v. Smith Barney, Harris, Upham & Co.,* No. 625 F.Supp. 25 (S.D.Fla. 1985); *Raiford v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,* No. C 83–685 A (N.D.Ga., May 16, 1985); *Westwind Transportation, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. 84–734–Civ–T–10 (M.D. Fla., Apr. 9, 1985). As Congress has not evinced an intent to preclude the arbitration of claims under the 1934 Act, the court holds that plaintiffs' federal claims are arbitrable.[1]

### B. The Effect of the Non-Waiver Provision

■ Finkle and Ross further contend that, even if agreements to arbitrate claims arising under the 1934 Act are enforcible, the parties did not intend to arbitrate such disputes. Finkle and Ross claim that this intent is manifested by the inclusion of a provision that states that the parties do not waive any rights under federal securities law.[2] This intent is claimed to override the mandatory terms of the arbitration clause. The court, therefore, must determine whether there is an effective agreement to arbitrate plaintiffs' claims. *See Mitsubishi Motors v. Soler Chrysler-Plymouth,* 105 S.Ct. at 3354. In so doing, the court is to utilize:

**1.** Plaintiff Mockridge argues that she did not knowingly waive her right to a judicial forum and that Prescott failed to abide by an SEC release that according to Mockridge stresses "that customers should not be led to believe, either before or after the occurence of the dispute, that a predispute arbitration agreement constitutes a waiver of the right to a judicial forum, *where such waiver would be void under the securities laws.*" Mockridge's Memorandum of Law at 18–19 (emphasis added). Based on this court's decision regarding the arbitratbility

of the federal claims, the waiver in this case "would [not] be void under the securities laws," and would therefore not be contrary to the SEC release.

**2.** The non-waiver clause in Finkle and Ross provides that "By this agreement to arbitrate future controversies, I understand that I do not waive any rights I may have under the Federal securities laws for controversies arising under such laws."

[F]ederal substantive law of arbitration, applicable to any arbitration agreement within the coverage of the act.... The Arbitration Act establishes that as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitration.

*Moses H. Cone Memorial Hospital v. Mercury Constr. Co.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983). Thus, as with any contract, the parties intentions are controlling, but those intentions are generously construed as to issues of arbitration. *Mitsubishi Motors Co. v. Soler Chrysler-Plymouth*, 105 S.Ct. at 3354.

Through the non-waiver provision of the arbitration clause, the parties agreed that plaintiffs did not waive "any rights [they] may have [had] under the federal securities laws for controversies arising under such laws" Plaintiffs Finkle and Ross Memorandum of Law at 2. Finkle and Ross assert that enforcement of the agreement to arbitrate their 1934 Act claims would constitute a waiver of their right to assert such claims in federal court. Thus, the plaintiffs contend that the arbitration clause does not require the arbitration of federal claims.

Plaintiffs do not give up their substantive rights under the federal laws by being required to arbitrate their dispute. *Mitsubishi Motors Co. v. Soler Chrysler-Plymouth*, 105 S.Ct. at 3355. By agreeing to the Arbitration Clause, plaintiffs agreed to substitute one forum for another; they have "trade[d] the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Id.* at 3355. Thus, the Arbitration Clause appears to encompass the instant federal claims.

Nevertheless, Finkle and Ross insist that the provision that precludes the waiving of plaintiffs' rights of the arbitration clause "reveals the clear intention and expectation of the parties that plaintiffs reserved the option either to arbitrate or litigate claims against defendants which arise pursuant to the federal securities laws," Plaintiffs Finkle and Ross' Memorandum of Law at 8. However, this provision on its face does not expressly or impliedly reserve a right to litigate claims in federal court. Nor does Rule 15c2–2, 17 C.F.R. § 240.15c2–2, which requires the inclusion of such non-waiver provisions, support plaintiffs' contention. The purpose of this rule is to ensure that public customers are not misled concerning the possible availability of recourse to the courts. Exchange Act Release No. 20397, *reprinted in* Fed.Sec.L.Rep. (CCH) ¶ 83,-452, at 86,356 (Nov. 18, 1983). It must be assumed that if Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from the text or the legislative history. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 105 S.Ct. at 3355. The provision required by Rule 15c2–2 merely serves to guarantee that potential plaintiffs receive notice that an agreement to arbitrate does not override existing federal laws limiting the scope of possible litigation; it does not create, nor does it preserve rights to litigate in federal courts.

Neither the plain language, nor the legislative history of Rule 15c2–2 demonstrates that the non-waiver provisions function as an agreement by the parties, that the plaintiff reserved the option to litigate in federal courts. Rather, the provision puts potential plaintiffs on notice that they must investigate their specific rights; Rule 15c2–2 does not require that such a provision detail those rights. The non-waiver provision does not negate the effect of an arbitration clause, where such clause is valid. Thus, the non-waiver provision does not reserve the right to litigate claims arising under the 1934 Act in federal court.

C. Failure to Fulfill a Condition Precedent and Failure to Raise an Affirmative Defense as Bars to Arbitration

Plaintiffs Finkle and Ross raise two further issues that purportedly foreclose the

arbitration of both the state and federal claims. Plaintiffs claim that (1) defendants have not fulfilled the conditions precedent to arbitration which were enumerated in the Arbitration Agreement, and (2) defendants have waived the defense of arbitration by not raising it as an affirmative defense in their answer.

■ Plaintiffs' first argument is easily dismissed. It is well established that procedural issues such as the fulfilling of conditions precedent to arbitration are decided by the arbitrator. *Ottley v. Sheepshead Nursing Home,* 688 F.2d 883, 890 (2d Cir. 1982); *Corporate Printing Co. v. New York Typographical Union No. 6,* 601 F.Supp. 323, (S.D.N.Y.1984), *aff'd mem.,* 767 F.2d 907 (2d Cir.1985).

■ Plaintiffs Finkle and Ross' second argument is also without merit. For a party to waive its right to arbitrate, it must actively participate in a lawsuit "in a manner inconsistent with the right to arbitrate such that there is prejudice to the other party." *Rush v. Oppenheimer & Co.,* 606 F.Supp. 300, 301 (S.D.N.Y.1985). In keeping with the policy that a waiver should not be easily inferred, mere delay will not justify a finding of waiver absent a showing of prejudice. *Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2d Cir.1968). Prejudice has been found when (1) a party that seeks arbitration engages in extensive discovery that is not available in arbitration; (2) when the party seeking arbitration causes extensive expense and delay by litigating continuously in court before seeking arbitration; and (3) when a party has continued so far in the litigation that a chance to arbitrate after sensing an adverse decision would in effect give that party another chance in a second forum. *Rush v. Oppenheimer & Co.,* 606 F.Supp. at 301.

■ In the instant case, plaintiffs filed their complaint on March 8, 1985. Defendants filed this motion on May 13. Discovery has not begun. Thus defendants have not actively engaged in the lawsuit and the only "prejudice" plaintiffs claim is the two-month delay. Such a delay is not of sufficiently serious nature to constitute prejudice as described in *Oppenheimer* and *Carcich.* *Cf. Evans v. Syracuse City School Dist.,* 704 F.2d 44, 47 (2d Cir.1983) (prejudice resulted when defendant raised res judicata defense after two pre-trial conferences, six days before the pre-scheduled trial date, and two years and nine months after the time when the defense could have been properly raised). Having determined that defendants have not waived their right to arbitrate, the court finds it unnecessary for defendants to amend their complaint. It is well established that a defendant may raise the substance of affirmative defenses in pre-trial motions. 5 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure (Civil) ¶ 1278, at 344 (2d ed. 1985).

### D. Arbitration Agreements as Contracts of Adhesion

Plaintiff Mockridge argues that the arbitration agreement operates as a contract of adhesion, and thus should not be enforced against the plaintiff. This argument, in this particular case, is insubstantial.

■ Contracts of adhesion arise when a standardized form of agreement, usually drafted by the party having superior bargaining power, is presented to a party, whose choice is either to accept or reject the contract without the opportunity to negotiate its terms. *M/V American Queen v. San Diego Marine Construction Corp.,* 708 F.2d 1483, 1489 (9th Cir.1983). Here, the investor is faced with an industry wide practice of including Arbitration Clauses in standardized brokerage contracts. As the investor faces the possibility of being excluded from the securities market unless he accepts a contract with such an agreement to arbitrate, such clauses come within the adhesion doctrine. However, mere inequality in bargaining power does not render a contract unenforcible, *Stanley A. Klopp, Inc. v. John Deere Co.,* 510 F.Supp. 807, 811 (E.D.Pa.1981), *aff'd,* 676 F.2d 688 (3d Cir.1982), nor are all standardized contracts unenforcible, *see Waggoner v. Dallaire,* 649 F.2d 1362, 1367 (9th Cir.1981); *Siegelman v. Cunard White Star,* 221 F.2d 189, 204–05 (2d Cir.1955) (Frank, J., dissenting); *Bank of Indiana National Association v.*

*Holyfield,* 476 F.Supp. 104, 110 (S.D.Miss. 1979); *in re Lowell,* 20 B.R. 464, 467 (Bankr.D.Mass.1982). As a consequence of current commercial realities, form forum clauses will control, absent a strong showing it should be set aside. *See The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972). For such a contract or clause to be void, it must fall within judicially imposed limits of enforcement. It will not be enforced against the weaker party when it is: (1) not within the reasonable expectations of said party or (2) within the reasonable expectations of the party, but, when considered in its context, is unduly oppressive, unconscionable or against public policy. Katsoris, *Arbitration of Public Securities Disputes,* 53 Fordham L.Rev. 279, 307 (1985); *see Waggoner v. Dallaire,* 649 F.2d at 1367; *Blalock Machinery v. Iowa Mfg. Co.,* 576 F.Supp. 774, 778–79 (N.D.Ga.1983).

Such pre-dispute arbitration agreements are not outside the reasonable expectations of the investor. *Katsoris, supra,* 53 Fordham L.Rev. at 307. Nor are they contrary to public policy, as indicated by the judicial and legislative presumption favoring the arbitration of such disputes. *See Moses H. Cone Memorial Hospital v. Mercury Constr. Co.,* 460 U.S. at 24–25, 103 S.Ct. at 941–42; *Williams v. E.F. Hutton & Co.,* 753 F.2d 117, 119 (D.C.Cir.1985).

■ The plaintiff makes no showing of unfairness, undue oppression or unconscionability arising as a result of the arbitration agreement. Such would be necessary to find the clause unenforcible. *See Waggoner,* 649 F.2d at 1367; *Bank of Indiana,* 476 F.Supp. at 111; A. Corbin, Contracts § 1376, at 20–22 (1962). The essence of such a showing is "that '... no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice....'" *Jump v. Manchester Data Sciences Corp.,* 424 F.Supp. 442, 444–45 (E.D.Mo.1976) (quoting 14 S. Williston, Williston on Contracts § 1632 (3d ed. W. Jaeger 1972)). Absent a specific showing of unfairness, undue oppression or unconscionability in the case at bar, this court will not refuse to give effect to an arbitration clause. In so doing, this court recognizes that, "[t]here is certainly nothing inherently unfair about the arbitration clauses and they are therefore valid and enforcible." *Surman v. Merrill, Lynch, Pierce, Fenner, & Smith,* 733 F.2d 59, 61 n. 1 (8th Cir.1984).

**E. The Overreaching Effect of the Arbitration Clause**

■ Finally, plaintiff Mockridge contends that defendant Prescott's attempt to apply the Arbitration Clause is overreaching and therefore unenforcible. Plaintiff relies on *Davis v. Chevy Chase Financial Ltd.,* which held that agreements to arbitrate are not binding on the parties as to matters they did not agree would be subject to that manner of dispute resolution. 667 F.2d 160, 165 (D.C.Cir. 1981). Plaintiff argues that the application of an arbitration clause contained in an options agreement to other forms of securities transactions is beyond the anticipation of the parties, and thus the court should refuse to give it effect. However, the plain language of the agreement clearly contemplates its application to all disputes arising between the parties, and not merely those pertaining to the options agreement. As the Arbitration Clause is a contract, the court may not rewrite its plain language. *Williams v. E.F. Hutton,* 753 F.2d at 119; *Davis,* 667 F.2d at 167. Therefore, the court finds the arbitration clause enforcible as agreed to by plaintiff Mockridge.

## CONCLUSION

The parties' agreement to arbitrate includes plaintiffs' state claims as well as their claims under the 1934 Act. Congress has not indicated an intent to override the parties' agreement as to the claims under the 1934 Act. Therefore, all of plaintiffs' claims are arbitrable. Defendants have not waived their right to raise this motion, and any procedural issues are for the arbitrator to decide. Absent a showing of unfairness, undue oppression or unconscionability, arbitration agreements are not unenforcible under the adhesion doctrine. Where the plain language of the arbitration clause

contemplates its application to all contracts between the parties, the court will not re-write the contract. Defendants' motion to compel arbitration of the state and federal claims is therefore granted in both actions.

SO ORDERED.