Brendan GILMORE, Plaintiff,

v.

SHEARSON/AMERICAN EXPRESS INC. and Stuart Travis, Defendants.

No. 84 CIV. 9011 (PKL).

United States District Court, S.D. New York.

Sept. 4, 1987.

See also 811 F.2d 108.

Herrick, Feinstein, New York City (Frederick A. Nicoll, of counsel), for plaintiff.

Theodore A. Krebsbach, New York City (Jeffrey L. Friedman, of counsel), for defendant Shearson.

Kahn & Hochberg, New York City (Ralph R. Hochberg, of counsel), for defendant Travis.

## OPINION & ORDER

LEISURE, District Judge:

In this case plaintiff, Rev. Brendan Gilmore, a former customer of defendant Shearson/American Express Inc. ("Shearson"), alleges that his securities account was churned by Shearson and defendant Stuart Travis, plaintiff's stockbroker at Shearson.

### Factual Background

Plaintiff commenced this action in December 1984. Gilmore had maintained a margin account with Shearson from January 1976 through April 1980. Plaintiff claimed that he had lost most of his life's savings because of defendants' churning in his account in violation of § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rules 10b–3 and 10b–5 (the "§ 10(b) claims"). Gilmore also asserted claims for breach of fiduciary duty, breach of contract and common law fraud.

Plaintiff alleged actual losses of at least $143,000 and punitive damages of $3,000,-000, and sought costs and disbursements including reasonable attorney's fees.

In its answer, Shearson claimed that the action should be stayed pending arbitration, pursuant to an agreement between the parties. Thereafter, Shearson moved in March 1985 to stay the district court proceedings and to compel arbitration of Gilmore's § 10(b) and common law claims. In May 1985, Shearson withdrew that motion.

In July 1985, Gilmore moved for leave to amend his complaint to assert a cause of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68. The amended complaint sought treble damages—$477,000 in actual damages and $10,000,000 in punitive damages. In response, Shearson filed a cross-motion opposing Gilmore's motion to amend and reasserting its claim of a contractual right to stay the litigation and to compel arbitration of the entire suit if leave to amend was granted.

The Court referred Gilmore's motion and Shearson's cross-motion to Magistrate Leonard Bernikow. In February 1986, Magistrate Bernikow submitted his report (the "Report and Recommendation") recommending that plaintiff's motion to amend the complaint be granted and that Shearson's motion to compel arbitration be granted in part and denied in part. With respect to Shearson's motion, the Magistrate concluded that: (1) the section 10(b) claims were not arbitrable [1]; (2) Shearson had waived its right to compel arbitration of the state law claims; and (3) the RICO claim added by the amended complaint should be submitted to arbitration. Finally, the Magistrate recommended that the action should be stayed pending arbitration of the RICO claim.

Subsequently, in April 1986, the Court of Appeals for the Second Circuit rendered its decision in *McMahon v. Shearson/American Express, Inc.,* 788 F.2d 94 (2d Cir.

---

1. The Magistrate thus did not address the issue of waiver as to the section 10(b) claims. *See* Report and Recommendation, dated February 10, 1986, at 9.

1986). In *McMahon,* the Court held that claims under section 10(b) and Rule 10b–5 are not arbitrable, and that public policy concerns made it inappropriate to apply the provisions of the Arbitration Act to RICO suits. *Id.* at 96, 98–99.

In an order dated May 20, 1986, this Court accepted most of Magistrate Bernikow's recommendations. Specifically, the Court: (1) granted plaintiff leave to amend his complaint to add a RICO claim; (2) accepted the magistrate's finding that Shearson had waived its right to compel arbitration of the state law claims; and (3) agreed that the section 10(b) claims were not arbitrable. Based on *McMahon,* however, the Court refused to compel arbitration of the RICO claim. Accordingly, the Court declined to grant a stay of the action.

Plaintiff filed the amended complaint on May 23, 1986. Shearson filed its answer to the amended complaint on June 3, 1986.

Thereafter, in July 1986, defendants filed the motions which are the subject of this opinion and order. Shearson moved to compel arbitration of all the claims in the amended complaint. Alternatively, Shearson moved for summary judgment dismissing all the claims in the amended complaint. Defendant Travis also moved for summary judgment dismissing the claims against him in the amended complaint.

On June 10, 1986, Shearson filed its appeal of the Court's denial of its motion for a stay. In the Second Circuit, Shearson argued that Gilmore's submission of an amended complaint revived its right to compel arbitration. *Gilmore v. Shearson/American Express Inc.,* 811 F.2d 108, 109, 112 (2d Cir.1987).[2] The Second Circuit, rejecting Shearson's reliance on *Rush v. Oppenheimer & Co.,* 779 F.2d 885 (2d Cir. 1985), held that "a motion to compel arbitration of a claim involves the core issue of a party's willingness to submit a dispute to judicial resolution and, if waived, is not automatically revived by the submission of an amended complaint." *Id.* at 112. Since

Shearson had explicitly withdrawn its motion to compel the § 10(b) and state law claims, the Court concluded that to "revive its right to move to compel arbitration" of the claims in the amended complaint, "Shearson must show that that the amended complaint contains charges that, in fairness, should nullify its earlier waiver and allow it to reassess its strategy...." *Id.* at 113. The Court found that Shearson had failed to make such a showing with respect to the state law claims. *Id.* Accordingly, the judgment of this Court refusing to compel arbitration of the common law claims asserted in the amended complaint was affirmed. *Id.* at 114.

On June 8, 1987, the Supreme Court rendered its opinion in *McMahon,* reversing the decision of the Second Circuit. The Court held that the plaintiffs' agreements to arbitrate Exchange Act claims were enforceable in accord with the explicit provisions of the Arbitration Act. *Shearson/American Express, Inc. v. McMahon,* — U.S. ——, 107 S.Ct. 2332, 2343, 96 L.Ed.2d 185 (1987). Moreover, the Court found that the plaintiffs' RICO claim was arbitrable under the terms of the Arbitration Act. *Id.* at 2346.

### I. Waiver

#### A. RICO Claim

■ In considering Shearson's renewed motion to compel arbitration, the Court must determine whether "the amended complaint contains charges that, in fairness, should nullify its earlier waiver and allow it to reassess its strategy...." 811 F.2d at 113. Clearly, with respect to plaintiff's RICO claim, which was asserted for the first time in the amended complaint, Gilmore should be allowed "to change course...." *See id.* In its opinion in this case, the Second Circuit explained, in fact, that Shearson could "revive its right to move to compel arbitration" by showing "that the amended complaint changed the scope or theory of Gilmore's claims in a

---

2. In its brief, Shearson expressly limited its interlocutory appeal to that portion of this Court's order which denied its motion to compel arbitration of the state law claims in the amended

complaint. 811 F.2d at 112. Accordingly, this Court's ruling that Gilmore's § 10(b) and RICO claims were not arbitrable was not contested in the appeal. *Id.*

manner that is relevant to the issues presented by Shearson in the district court." *Id.* (citing *Brown v. E.F. Hutton & Co.*, 610 F.Supp. 76, 78 (S.D.Fla.1985)). The addition of the RICO claim certainly adds a new "theory" to plaintiff's case.

■ Gilmore argues, however, that "it has already been established as the law of the case that plaintiff's § 10(b) and RICO claims are not arbitrable." Plaintiff's Memorandum of Law at 43.

The law of the case doctrine posits that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' *Arizona v. California,* 460 U.S. 605, 618 [103 S.Ct. 1382, 1391, 75 L.Ed.2d 318] (1983). However, the law of the case doctrine 'directs a court's discretion, it does not limit the tribunal's power.' *Id.* We previously have noted that '[t]he doctrine of the law of the case is not an inviolate rule in this Circuit,' *United States v. Birney,* 686 F.2d 102, 107 (2d Cir.1982), and that the doctrine merely expresses the general practice of refusing to reopen what has been decided. *Id.* ... However, reconsideration may be justified if the following grounds are present: 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' 18 C. Wright, A. Miller and E. Cooper, Federal Practice & Procedure § 4478, at 790 (1981).

*United States v. Melendez-Carrion,* 820 F.2d 56, 60 n. 1 (2d Cir.1987) (parallel citations omitted). *See also Slotkin v. Citizens Casualty Co. of New York,* 614 F.2d 301, 312 (2d Cir.1979), *cert. denied,* 449 U.S. 981, 101 S.Ct. 395, 396, 66 L.Ed.2d 243 (1980); *Corporacion de Mercadeo Agricola v. Mellon Bank International,* 608 F.2d 43, 48 (2d Cir.1979). In this case, this Court has previously ruled that plaintiff's

§ 10(b) and RICO claims are not arbitrable.[3] Obviously, the Supreme Court has now settled the law to the contrary.

[I]f, before a case in a district court has proceeded to final judgment, a decision of the Supreme Court demonstrates that a ruling on which the judgment would depend was in error, no principal of 'the law of the case' would want a failure on our part to correct the ruling.

*Zdanok v. Glidden Co.,* 327 F.2d 944, 951 (2d Cir.), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964). *Accord Fogel v. Chestnutt,* 668 F.2d 100, 109 (2d Cir.1981), *cert. denied,* 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982). *Cf. Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 853 (2d Cir.1987) (suggesting that district court "not go forward with trial until the Supreme Court renders its decision in *McMahon* "); *Chang v. Lin,* 824 F.2d 219, 221–22 (2d Cir.1987) (reversing, on basis of Supreme Court's decision in *McMahon,* district court's ruling). Accordingly, the Court now holds that plaintiff's RICO and § 10(b) claims are subject to arbitration.[4]

B. Federal Securities Claims

■ With respect to plaintiff's § 10(b) claims, it is a close question whether Shearson should be allowed "to reassess its strategy" and, in effect, to retract its earlier waiver. *See* 811 F.2d at 113. In rejecting Shearson's argument regarding revival of its right to move to compel the state law claims, the Second Circuit explained that: (1) the addition of the RICO claim did not amend the state law claims, which were at the time of the appeal the only claims it was seeking to arbitrate; and (2) since the RICO claim had been held not arbitrable, it would be litigated in the district court regardless of the outcome of the motion to compel arbitration. *Id.* (citing *McMahon,* 788 F.2d at 98–99). Plaintiff's amended complaint did not materially alter the

---

**3.** As noted previously, the interlocutory appeal in this case involved only Shearson's motion to compel arbitration of plaintiff's state law claims. 811 F.2d at 112. Thus, the Second Circuit did not establish a "law of the case" regarding arbitration of the § 10(b) and RICO claims. *Contrast infra* p. 319.

**4.** It cannot be said that applying an intervening change in the decisional law, which requires arbitration rather than litigation of plaintiff's federal claims, "will result in manifest injustice." *See Leber-Krebs, Inc. v. Capitol Records,* 779 F.2d 895, 898–99 (2d Cir.1985).

§ 10(b) claims, but, with the RICO count, it did add a claim which is subject to arbitration and which will not be litigated in this Court regardless of the outcome of the motion to compel arbitration of the § 10(b) claims.

In discussing the revival issue, the Second Circuit also noted that Magistrate Bernikow "described Shearson's 'unequivocal withdrawal' of its motion to compel arbitration as 'the result of Shearson's careful evaluation of business considerations.'" *Id.* As the magistrate recounted the history of the original motion to compel arbitration:

> Shearson made a motion to compel arbitration, but withdrew it at the suggestion of Judge Brieant, to whom the case was originally assigned. Shearson says its withdrawal of the motion was a business determination, made to avoid the protracted litigation and expense attendant to resolving issues raised by plaintiff regarding the validity of the arbitration clauses. Shearson also submits that the motion was withdrawn because of the unsettled state of the law in May, 1985, regarding the arbitrability of section 10(b) claims and RICO claims. Shearson adds that had it known that a RICO claim would be asserted, it would not have withdrawn its earlier motion.

Report and Recommendation at 8. Until 1985, the law was clear in the Second Circuit that courts would refuse to enforce predispute agreements to compel arbitration of claims under the Securities Exchange Act of 1934. *See Allegaert v. Perot,* 548 F.2d 432, 437–38 (2d Cir.), *cert. denied,* 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977); *Greater Continental Corp. v. Schechter,* 422 F.2d 1100, 1103 (2d Cir.1970). During the 32 years following the Supreme Court's decision in *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), "each of the eight circuits that addressed the issue concluded that the holding of *Wilko* was fully applicable to claims arising under the Securities Exchange Act of 1934." *McMahon,* 107 S.Ct. at 2359 (Stevens, J., dissenting in part). It was only after Justice White, concurring in a case decided on March 4, 1985, indicated

"his 'substantial doubt' about *Wilko's* applicability to the 1934 Act, that two circuits held it to be inapplicable." *Id.* at 2359 n. 1 (citing *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 224, 105 S.Ct. 1238, 1244, 84 L.Ed.2d 158 (1985)). *See also McMahon,* 788 F.2d at 96–97 (reviewing "settled law of this Circuit that claims under § 10(b) and Rule 10b–5 of the 1934 Act are not arbitrable"); *McMahon,* 107 S.Ct. at 2341 n. 3 (noting SEC's "'assumption ... that agreements to arbitrate Rule 10b–5 claims were not, in fact, arbitrable'").

 Shearson's allegation that it would have not withdrawn its earlier motion if it had known that a RICO claim would be asserted is credible in view of the fact that Shearson engaged in protracted litigation regarding the validity of an arbitration clause in *McMahon,* which involved both § 10(b) and RICO claims. *See* 618 F.Supp. 384 (S.D.N.Y.1985), *aff'd in part, rev'd in part,* 788 F.2d 94 (2d Cir.1986), *rev'd,* 107 S.Ct. 2332 (1987). Although Shearson made a "business determination" in agreeing to withdraw its motion to compel arbitration, Report and Recommendation at 8, the foundation of that decision was eroded by plaintiff's successful motion to amend the complaint and by an intervening change in the law. In view of these circumstances, the Court concludes that, in fairness, Shearson should be allowed to revive its right to move to compel arbitration of the § 10(b) claims. It is a close question, as stated previously, but "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

Plaintiff has argued in the past that waiver of Shearson's right to move to compel arbitration was caused not only by the withdrawal of the earlier motion, but by Shearson's participation in extensive discovery. *See* Report and Recommendation at 8. Plaintiff thus invokes the rule that

"waiver of the right to compel arbitration due to participation in litigation may be found," in certain cases, "when prejudice to the other party is demonstrated." *Rush,* 779 F.2d at 887 (citations omitted). In *Rush,* the Court considered aspects of pre-trial proceedings which may in some circumstances amount to prejudice sufficient to support a conclusion of waiver of the contractual right to arbitrate. *Id.* at 887–89. These included expense and delay, filing of a motion to dismiss, participation in discovery, and service of an answer. In this case, however, the Court of Appeals has already rejected the "suggestion that the relevant inquiry in determining whether [Shearson] may move to compel arbitration in response to the amended complaint is the waiver analysis discussed in *Rush.*" 811 F.2d at 113. Moreover, even if the *Rush* analysis were applied at this juncture, it is settled that no waiver of the right to arbitrate can occur from conducting discovery on federal securities claims that defendants " 'reasonable perceived' " to be nonarbitrable. *Rush,* 779 F.2d at 888–89 (citations omitted).[5]

### C. State Law Claims

■ Remaining for consideration is that part of Shearson's motion seeking to compel arbitration of the common law claims. The Second Circuit has held that Shearson failed to make a sufficient showing to permit revival of its right to move to compel arbitration of the state law claims. 811 F.2d at 112–13. It is true that the Second

Circuit's reasoning was based in part on the premise that the RICO claim is not arbitrable. "Under one prong of the law of the case doctrine," however, " '[w]hen an appellate court has once decided an issue, the trial court, at a later stage of the litigation, is under a duty to follow the appellate court's ruling on that issue.' " *Doe v. New York City Department of Social Services,* 709 F.2d 782, 788 (2d Cir.) (citation omitted), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 177 (1983). *See also Fine v. Bellefonte Underwriters Insurance Co.,* 758 F.2d 50, 52 (2d Cir.), *cert. denied,* 474 U.S. 826, 106 S.Ct. 86, 88 L.Ed.2d 70 (1985); *Crane Co. v. American Standard, Inc.,* 603 F.2d 244, 248 n. 8 (2d Cir.1979).[6] Accordingly, Shearson's motion to compel arbitration of the state law claims must be denied.

### II. Motion to Compel

■ Once it has been decided that the federal statutory claims asserted by the plaintiff are arbitrable, the Court must determine whether the parties agreed to arbitrate and whether plaintiff's claims fall within the scope of the agreement. *Genesco,* 815 F.2d at 844.[7]

Plaintiff opened his account with Lehman Brothers, Shearson's predecessor, in 1975. On January 2, 1979, he engaged in two option transactions, the only option transactions he made. Plaintiff bought and sold two IBM put contracts. Apparently, as a result of these transactions, he

---

**5.** Where a plaintiff "is unable to point to any specific discovery conducted by defendants that was not relevant" to claims " 'reasonably perceived' to be nonarbitrable," then "he cannot establish that prejudice in the arbitration would result from that discovery." 779 F.2d at 888–89 (citations omitted). From the previous discussion, *see supra* p. 318, it is apparent that Shearson "reasonably perceived" its § 10(b) claims to be nonarbitrable.

Due to a dispute between the parties, no extensive discovery occurred after the amended complaint was filed on May 23, 1986. *See* Order of Magistrate Bernikow dated June 17, 1986, and Objections of Shearson dated June 27, 1986. Moreover, although Shearson failed to raise the defense of arbitrability in its answer to the amended complaint, it filed the instant motion a short time later. Thus, plaintiff cannot demonstrate prejudice from Shearson's conduct after

service of the amended complaint and before filing of the instant motion to compel arbitration. *See Rush,* 779 F.2d at 889.

**6.** In *Crane,* the Court indicated that a district court may not deviate from the mandate of the Court of Appeals to adjust for an intervening Supreme Court ruling, absent permission. 603 F.2d at 248 n. 8 (citing *Crane Co. v. American Standard, Inc.,* 490 F.2d 332, 341 (2d Cir.1973); *Higgins v. California Prune & Apricot Grower, Inc.,* 3 F.2d 896, 897 (2d Cir.1924); *Rankin v. Atlantic Maritime Co.,* 117 F.Supp. 253, 254 (S.D. N.Y.1953)).

**7.** These issues are addressed in the Report and Recommendation at 11–13. The Court adopts Magistrate Bernikow's findings and recommendation in this regard.

was asked to sign a "Client Option Agreement," which he did on January 25, 1979. The agreement contains the arbitration clause at issue.[8]

Plaintiff argues that the agreement does not cover securities transactions, the bulk of the investments he made with Shearson. According to plaintiff, only the two option transactions can be subject to arbitration because the agreement applies only to options. He adds, however, that these two transactions are not arbitrable because they precede his signing of the agreement by at least three weeks.

In response, Shearson argues that the agreement applies to plaintiff's account. Shearson points to the language of the agreement, which provides in part that "[a]ny controversy arising out of or relating to the account of [plaintiff] ... shall be settled by arbitration." Shearson's position is that since plaintiff maintained only one account at Shearson, and did not have an option account as distinguished from a securities account, the agreement covered both his securities and options transactions.[9]

An argument similar to plaintiff's was made in *Finkle and Ross v. A.G. Becker Paribas, Inc.*, 622 F.Supp. 1505, 1512 (S.D. N.Y.1985). In rejecting that contention, Judge Edelstein explained that "the plain language of the agreement clearly contemplates its application to all disputes arising between the parties, and not merely those pertaining to the options agreement." *Id.* The agreement in *Finkle and Ross*, a copy of which has been submitted by Shearson for comparison, and the one in this case, though not identical, are in important respects similar. Accordingly, the Court finds that the arbitration clause is applicable to all the transactions at issue.[10] *See generally Genesco*, 815 F.2d at 847 (Federal policy requires broad construction of arbitration clauses.).

Plaintiff also contends that he has no recollection of even having seen the agreement, much less having signed it. As a result, he maintains, it cannot be said that he intended to consent to arbitration of all claims arising at any time out of his stock account. Nevertheless, as Shearson notes, plaintiff does not contend that his signature was obtained by forgery or fraud. Therefore, plaintiff cannot avoid "the general contract rule that a person of ordinary understanding and competence will be bound by the provisions of a contract that he signs whether or not he has read them." *See Avila Group, Inc. v. Norman J. of California*, 426 F.Supp. 537, 540 (S.D.N.Y. 1977). *See also McMahon*, 107 S.Ct. at 2337 (encouraging enforcement of arbitration agreements absent "fraud or excessive economic power"); *Genesco*, 815 F.2d at 846 (subjective agreement as to arbitration clause held unnecessary). Accordingly, the RICO and § 10(b) claims must be submitted to arbitration. *See Byrd*, 470 U.S. at 218, 105 S.Ct. at 1241 (Arbitration Act "mandates that district courts *shall* direct the parties to proceed to arbitration on issues to which an arbitration agreement has been signed.") (emphasis in original).

## III. Stay

■ Shearson moves for a stay of the instant proceeding. "The decision to stay the balance of the proceedings pending arbitration is a matter largely within the dis-

---

**8.** The arbitration clause provides:

Any controversy arising out of or relating to the account of the undersigned, to transactions with you for the undersigned or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the rules, then in effect, of the New York Stock Exchange, American Stock Exchange, Chicago Board Options Exchange, or National Assoc. of Securities Dealers as the undersigned may elect. If the undersigned does not make such election, then you may make such election. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

**9.** For the purposes of § 10(b) and Rule 10b–5, an option is a security. *See, e.g., Lloyd v. Industrial Bio-Test Laboratories, Inc.*, 454 F.Supp. 807, 811 (S.D.N.Y.1978) (citation omitted). An option gives the holder a contractual right to purchase stock at a specified price. *Id.*

**10.** That some of the transactions may have preceded the date of the agreement is not relevant. The arbitration clause, by its terms, applied to any controversy relating to plaintiff's account.

trict court's discretion to control its docket." *Genesco*, 815 F.2d at 856 (citing *Moses H. Cone Memorial Hospital*, 460 U.S. at 20 n. 23, 103 S.Ct. at 939, n. 23). "Broad stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit." *Id.* (citing *NPS Communications, Inc. v. Continental Group, Inc.*, 760 F.2d 463, 465 (2d Cir.1985); *S.A. Mineracao Da Trindade-Samitri Utah International*, 745 F.2d 190, 196–97). In this case, it is plain that the arbitrable claims predominate the lawsuit. It is also clear that the facts underlying the federal and state claims are the same. *See Leone v. Advest, Inc.*, 624 F.Supp. 297, 303 (S.D.N.Y.1985). Accordingly, the motion for a stay is hereby granted.[11]

## IV. Conclusion

As the Second Circuit has remarked,

Although granting defendants' demand for arbitration at this point may be sanctioning a less efficient means of resolving this dispute, we reemphasize that neither efficiency nor judicial economy is the primary goal behind the arbitration act. Indeed, we have recently stated that a district court may not, on considerations of judical economy, refuse to stay

the proceedings before it in favor of arbitration. *See Seguros Banvenez, S.A. v. S/S Oliver Drescher*, 761 F.2d 855, 862 (2d Cir.1985). 'The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation, at least absent a countervailing policy manifested in another federal statute.'

*Rush*, 779 F.2d at 891 (quoting *Byrd*, 470 U.S. at 221, 105 S.Ct. at 1242–43).

Accordingly, Shearson's motion to compel arbitration of the RICO and § 10(b) claims is hereby granted and the balance of the litigation, including the action against defendant Travis, is hereby stayed pending the arbitration.[12]

---

**11.** In *Leone*, the Court explained that where the factual allegations underlying the arbitrable and nonarbitrable claims are identical, a stay may be warranted by considerations of judicial economy and convenience because a plaintiff's success at arbitration may render litigation of the nonarbitrable claims unnecessary. 624 F.Supp. at 303. While *"Byrd* accepts 'piecemeal' litigation of federal and state claims ... [i]t does not ... require unnecessary duplication of effort...." *Id.* (quoting *Byrd*, 470 U.S. at 221, 105 S.Ct. at 1242).

In *Chang v. Lin*, 824 F.2d 219, 22 (2d Cir. 1987), the Second Circuit acknowledged that it had "previously allowed courts great discretion in staying nonarbitrable state and federal claims pending arbitration of related claims." It held for the first time, however, that due to the "congressional declaration that agreements to arbitrate [1933 Act] claims are unenforceable," such claims should not be routinely stayed. *Id.* Rather, litigation of 1933 Act claims "should proceed simultaneously" with arbitration of related federal and state claims, "absent compelling reasons to stay the litigation." *Id.*, At 223. In this case, the balance of the litigation to be stayed includes only the state law claims against

Shearson and arbitrable federal statutory claims against Travis. These are claims to which no congressionally-declared policy against arbitration applies.

Before imposing the stay, the Court will address the remaining summary judgment motions. *See Leone*, 624 F.Supp. at 303. Although defendants' motions nominally seek dismissal of plaintiff's entire action, defendants' papers fail to discuss specifically plaintiff's common law claims. Accordingly, defendants' motions to dismiss the state law claims are denied without prejudice to being renewed after vacatur of the stay. The parties' discovery dispute will be more appropriately addressed after the completion of arbitration and vacatur of the stay.

**12.** In *Moses H. Cone Memorial Hospital*, the Supreme Court explained that "an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." 460 U.S. at 20, 103 S.Ct. at 939. "[I]t may be advisable to stay litigation among the nonarbitrating parties pending the outcome of the arbitration." *Id.* at 20 n. 23, 103 S.Ct. at 939 n. 23.