No. 88-120

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

ONATA FRATES,

        Plaintiff and Respondent,

-vs-

EDWARD D. JONES & CO., a limited
partnership, LAWRENCE SOBOL its
general partner and LARRY RICHARDSON,

        Defendants and Appellants.

APPEAL FROM: District Court of the Thirteenth Judicial District,
            In and for the County of Yellowstone,
            The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Moulton, Bellingham, Longo & Mather; Doug James,
        Billings, Montana

    For Respondent:

        Howard Strause and Lawrence Anderson, Great Falls,
        Montana

Submitted on Briefs: July 14, 1988

Decided: August 23, 1988

Filed: AUG 23 1988

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

This is an appeal and alternative application for Writ of Supervisory Control by appellant/relators Edward Jones and Co., et al. (Jones) from a January 7, 1988, order of the Thirteenth Judicial District Court, Yellowstone County, denying Jones' motion to compel arbitration of a claim filed by plaintiff/respondent Onata Frates (Frates). Individuals named in the suit are Lawrence Sobol, a general partner of Jones, and Larry Richardson (Richardson), a registered representative of Jones. We affirm.

Frates filed a complaint on April 21, 1987 against Jones. In the claim, Frates presented eight counts of liability against Jones alleging breach of fiduciary duty; enforcement of an oral promise; fraud; constructive fraud; bad faith; negligent misrepresentation; negligence; and violations of the Montana Securities Act. These claims are all based on the purchase of limited partnership interests by Frates and her deceased husband through their accounts with Jones in 1982, 1983, and 1984.

Jones presents the following issues for our consideration:

1. Whether the District Court's order denying Jones' motion to compel arbitration is an appealable order?

2. Whether the District Court erred by following Montana law rather than Missouri law when it construed the arbitration agreement?

3. Did the District Court exceed its jurisdiction when it considered the issues of fiduciary relationship and fraud in the procurement of the agreement signed by Frates?

4. Did the District Court err as a matter of law in failing to compel arbitration?

Frates began purchasing securities with her husband, who died in 1985, from Jones in May of 1981. The Frates opened a joint cash account and began dealing with Richardson, an individual broker-dealer of Jones. After a number of successful investments, Mr. Frates complained that the couples' income taxes were too high and therefore they began delving into certain tax-advantage investments. In addition to securities not at issue in this case, Mr. and Mrs. Frates invested $58,000 between October 12, 1982 and July 23, 1984 through their Jones' account in Petro-Lewis and NRM securities. The securities that are the subject of the complaint were limited partnership interests known as Petro-Lewis (purchased December, 1982), NRM 82-B (purchased December, 1982), NRM 83-B (purchased June, 1983), and NRM 84-C (purchased July, 1984).

Prior to making each of the investments, the Frates received prospectus statements on the securities they purchased. Further, according to an affidavit filed by Richardson, they were also advised of the risk associated with the investments. The Frates signed a Petro-Lewis and NRM application form acknowledging receipt of the prospectus and representing that they understood the risks associated with the investments.

After Eugene Frates' death in 1985, Mrs. Frates continued to invest through her account at Jones. In March of 1986, she contacted Richardson because she wanted to borrow money against the investments for the purpose of making loans to her son. Mrs. Frates, then age 78, was advised by Richardson to open a "margin account." Mrs. Frates opened the margin account by executing a document entitled "Edward D. Jones & Co. 'Full Service Account' Customer Loan Agreement and Loan Consent." Richardson

3

presented the agreement to her but she stated in her affidavit that she did not read the agreement.

> [N]o one asked me to read the agreement, no one encouraged me to read the agreement, no one read the agreement to me, no one told me the importance of the agreement, nor did anyone explain what was in the agreement.

Richardson claims that he "reviewed" the agreement with Frates but he does not claim that he discussed any of the 19 paragraphs. No further investments were made by Mrs. Frates after the margin account was opened.

Paragraphs 16 and 17 are important to this case. Those clauses read:

> 16. In the event at [sic] any claim or controversy between you and the undersigned arising under the federal securities laws, you have the right to submit such matter before a judicial forum. Any other controversy arising out of or relating to my accounts shall be settled by arbitration in accordance with the rules, then in effect, of the National Association of Securities Dealers, Inc. or the Boards of Directors of the New York Stock Exchange, Inc. and/or the American Stock Exchange, Inc. as I may elect. If I do not make such an election by registered mail addressed to you at your main office within 5 days after demand by you that I make such election, then you may make such election. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.
>
> 17. This agreement and its enforcement shall be governed by the laws of the State of Missouri and its provisions shall be continuous; shall cover individually and collectively all accounts which the undersigned may open or reopen with you and shall insure [sic]

4

> to the benefit of your present
> organization, and any successor
> organization, . . . and shall be binding
> upon the undersigned and/or estate,
> executors, administrators and assigns of
> the undersigned. (Emphasis added.)

Subsequent to the signing of the agreement, the limited partnership interests, which were based on oil and gas development, declined in value. Richardson never informed Frates of the decrease in value of the investments until after her husband had died. Presently, the investments have no value.

The arbitration clause was discovered by Jones when responding to Frates' initial discovery requests. Jones served Frates with a demand for arbitration but she refused to consent. On September 28, 1987, Jones filed a motion in the District Court requesting dismissal of the claim or, in the alternative, to stay all litigation pending outcome of compelled arbitration. In its memorandum and order dated January 7, 1988, the District Court stated that the motion was denied because of the possibility of fraud or constructive fraud and because of the express language of the contract. The court stated:

> The language of the agreement itself
> refers to present and future transactions
> . . . Paragraph (17) states: "[t]his
> agreement . . . shall cover . . . all
> accounts which the undersigned may open
> or reopen with you . . . " which clearly
> refers to future transactions and not
> those occurring prior to the date of the
> agreement. Reading the document as a
> whole, the provisions apply to the margin
> account and future transactions only.

From this order, defendants appealed. In addition, they have requested a writ of supervisory control in the

alternative if it is determined that the court's order is nonappealable.

Frates initially argues that the order is nonappealable because it is "unauthorized under the list of appealable orders set out in Rule 1(b), M.R.App.P." Frates argues that the order denying the motion to compel arbitration is a motion to dismiss "which is in reality [because of reliance on matters outside the pleadings] a motion for summary judgment." Therefore, Frates relies on the rule that orders denying summary judgment are not appealable. Nutter v. Permian Corp. (Mont. 1986), 727 P.2d 1338, 1340, 43 St.Rep. 2027, 2028.

Section 27-5-324(1)(a), MCA, permits appeal from "an order denying an application to compel arbitration." We read this statute to allow appeal when a district court denies a motion to compel arbitration. Further, under federal law, 28 U.S.C. § 1292(a)(1) permits appeal of an order denying arbitration as an interlocutory appeal. See Pierson v. Dean, Witter, Reynolds, Inc. (7th Cir. 1984), 742 F.2d 334, (holding issue of arbitration was appealable as an interlocutory matter, 28 U.S.C. § 1292(a)(1)); Ford v. Shearson Lehman/American Express, Inc. (Cal. 1986), 180 Cal.App.3d 1011, 225 Cal.Rptr. 895.

In Passage v. Prudential-Bache Securities, Inc. (Mont. 1986), 727 P.2d 1298, 43 St.Rep. 1532, this Court held that a state court "clearly has jurisdiction to order arbitration under the Federal Arbitration Act" relying on the United States Supreme Court decision of Southland Corp. v. Keating (1984), 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1. Therefore, we will review the trial court's decision in this case denying arbitration even though the District Court did not specifically rely on the Federal Arbitration Act but more so on the State Uniform Arbitration Act.

6

Frates' next claim is that the District Court properly had jurisdiction to decide the issue of fraud in the inducement. We note that the District Court's order does address the possibility that fraud, constructive fraud and a fiduciary relationship between Frates and her broker may be present in this case, but the court properly did not make a determination in regard to the issues. The court stated only that it would analyze the "broker's control, the investment sophistication of the customer, the trust and confidence the customer places with the broker, and whether the customer invariably followed the broker's advice." The District Court left the claims for future determination: "[i]f this was a fiduciary relationship and there was constructive fraud, the agreement and the arbitration clause would be void."

The gravamen of the District Court's opinion was the fact that the arbitration clause's specific language, when read in light of the whole contract, did not apply to past transactions, but was prospective only. We hold this was a proper finding. We note that the existence of the arbitration clause was not known by Jones until after discovery commenced in this case. The District Court nonetheless stated that it did not believe that Jones had "substantially utilized the litigation machinery" thereby constituting a waiver of its right to assert the arbitration clause. Citing, Maxum Foundations, Inc. v. Salus Corp. (4th Cir. 1985), 779 F.2d 974.

The federal policy is that arbitration is favored when a question of arbitration is raised and a contractual clause is present. Shearson/American Express, Inc. v. McMahon (1987), ____ U.S. ____, 107 S.Ct. 2332, 96 L.Ed.2d 185. The United States Supreme Court stated in McMahon that this policy is based on 9 U.S.C. § 2 that mandates that arbitration agreements "shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (Emphasis added.) A similar policy is expressed in the Montana Arbitration Act in § 27-5-114(1), MCA. The District Court in this case appropriately looked at both federal and state law and stated that an arbitration agreement may be unenforceable where grounds existed either in law or equity to revoke the entire contract.

Here, the issue of revocation of the entire contract need not be decided. A plain reading of the agreement is sufficient to dispose of this case. We begin with the determination that arbitration clauses are creatures of contract and therefore principles of contract interpretation are applicable.

Frates contends, and we agree, that the contract is not clearly drafted with numerous typographical errors, confusing and complex language, and unclear construction. Any ambiguity in the arbitration clause or other aspects of the agreement are to be construed strictly against Jones because it, in essence, drafted the contract. St. Paul Fire and Marine Ins. Co. v. Cumiskey (1983), 204 Mont. 350, 665 P.2d 223; Shanahan v. Universal Tavern Corp. (1978), 179 Mont. 36, 585 P.2d 1314, see § 28-3-206, MCA. The District Court also followed this line of reasoning and stated "[t]his rule of construction must be balanced against the federal policy favoring arbitration . . . "

The District Court held that the language of the agreement was not applicable to the transactions at issue in this case. We agree. The above underlined language of paragraph (17) is probably the most compelling language used to support the inference of a present or future transaction. That language states "[t]his agreement . . . shall cover . . . all accounts which the undersigned may open or reopen

with you . . . " The contract, as the District Court pointed out, also refers to a future debtor/creditor relationship between Frates and Jones in paragraphs (4), (5), (7), (8), (9), (11), and (12).

We are aware of the federal policy favoring arbitration, but our review in this case has been limited to the application of the arbitration clause to this case and because this is an interlocutory matter only, Jones' rights have not been extinguished. Frates and her husband purchased the interests at issue here prior to the time Mrs. Frates signed the agreement to open the margin account.

Jones argues that even though the purchases by Frates occurred in 1982, 1983, and 1984, prior to the execution of the arbitration agreement, the District Court erred as a matter of law. Jones cites Gilmore v. Shearson/American Express, Inc. (S.D.N.Y. 1987), 668 F.Supp. 314, for the proposition that an arbitration agreement signed after specific transactions occurred can be retroactively applied to those transactions. However, we note that the clause involved in Gilmore stated all "transactions" rather than "accounts" as in this instance. Therefore, the District Court appropriately determined that the Gilmore clause was broader than the clause involved in this case.

Due to the prospective nature of paragraph (17) and the contract in its entirety, the District Court properly denied Jones' motion to compel arbitration.

Affirmed.

_V. C. Gulbrandson_
Justice

9

We concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_Fred J. Weber_

_William E. Hunt Sr_

_R. C. McDonough_
Justices

Mr. Justice John C. Sheehy did not participate in this decision.