No. 88-404

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

RICHARD LARSEN,

Plaintiff and Appellant,

-vs-

ROBERT OPIE and PIPER, JAFFRAY & HOPWOOD,
a Delaware Corporation,

Defendants and Respondents.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Russell K. Fillner, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

J. Daniel Hoven & Oliver Goe, Browning, Kaleczyc,
Berry & Hoven; Helena, Montana

For Respondent:

John G. Crist, Dorsey & Whitney; Billings, Montana

Submitted on Briefs: March 9, 1989

Decided: April 19, 1989

Filed:

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Appellant Larsen sued Piper, Jaffray & Hopwood and their seller Robert Opie in the District Court of the Thirteenth Judicial District for misrepresentation and fraud in the inducement of signing option agreements and margin contracts. This suit was filed in response to respondents' motion to compel arbitration for a dispute arising between the parties. On June 30, 1988, Judge Russell K. Fillner granted respondents' motions and ordered appellant to submit to arbitration. We affirm.

The issues on appeal are:

1. Whether the District Court's order compelling appellant to arbitrate is an appealable order?

2. Whether the issue of fraud in the inducement regarding the margin agreement and customer option agreement is to be determined by the court or by arbitration?

Robert Opie, an investment executive with Piper, Jaffray & Hopwood, negotiated with appellant Larsen to sell Larsen "Margin and Customer Option Agreements." Larsen alleges that he was a "neophyte" investor and had informed Piper, Jaffray & Hopwood that he would refuse to enter any agreement which would subject him to possible unlimited loss. Appellant also alleges that Opie was aware of this but nonetheless coerced appellant to enter the highly volatile area of margin agreements and option agreements.

Larsen contends that, when signing the option agreement and margin agreement, he did not read either contract but instead relied on the oral assertions of respondent. Appellant refers to two specific clauses of which he was unaware: first, with each agreement was supplied "level four and level five agreements" which stated that the investor understood the high risks involved in selling uncovered put options and that he could be exposed to unlimited loss; second, the agreements contained an arbitration clause which stated:

> We [Larsen] specifically agree and recognize
> that all controversies which may arise between

> Piper, Jaffray & Hopwood Incorporated, its agents, representatives or employees and me, concerning any transaction, account, or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on, or subsequent to the date hereof, shall be determined by arbitration to the fullest extent provided by law.

Because of appellant's contention that he never read the agreements, he claims he was unaware of either of these clauses at the time of signing. Appellant subsequently lost money on the margin and option agreements when the stock market crashed dramatically on October 19, 1987. His stock was sold to cover losses and respondents claim that he still owes $15,000, debited to his account.

Piper, Jaffray & Hopwood sought to arbitrate the matter, but Larsen filed a suit in District Court alleging breach of duty of good faith and fair dealing, fraud, constructive fraud, and that the contracts were void. Appellant argues that if a contract is void from its inception, the arbitration clause contained therein cannot compel arbitration to decide the validity of the contract itself. Respondents claim that the issue of fraud is for the arbitrator's review, compelled by the Uniform Arbitration Act, 9 U.S.C. sections 1-14 (1947).

The first issue is whether the decision of the District Court is an appealable order.

The Montana Rules of Appellate Procedure, Title 25, Chapter 21, provide that:

> (a) Upon appeal from a judgment in a civil case, the court may review the verdict or decision, and any intermediate order or decision excepted or objected to within the meaning of Rule 46 of the Montana Rules of Civil Procedure, which involved the merits, or necessarily affects the judgment, except a decision or order from which an appeal might have been taken.

Rule 2(a), M.R.App.P.

Respondent argues that the appeal by Larsen is an interlocutory appeal and is subject to the Judicial Improvements and Access to Justice Act, P.L. 100-702, Section 1019, which states that an appeal may not be taken from an interlocutory order compelling arbitration. However, the appeal to this Court is from a final determination of the District Court. In finding that Larsen's claims were subject to arbitration, the District Court made a final determination regarding the claims by plaintiff at the state court level. Any arguments by either party were thereafter subject to arbitration as prescribed by the Arbitration Committee of the New York Stock Exchange or the National Association of Securities Dealers, Inc. The order was final and is appealable.

The second issue is whether the issue of fraud in the inducement regarding the margin agreements and customer option agreement is to be decided by the District Court or by arbitration.

The Uniform Arbitration Act, 9 U.S.C., applies to any contract involving commerce. Section 2 of the Act states:

> . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

In Southland Corp. v. Keating (1984), 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1, 12, the Court stated:

> In enacting [section] 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.

Appellant alleges that the arbitration clauses here are invalid. He claims that because respondents did not specifically

4

discuss the arbitration clauses with appellant, these clauses were not bargained for and were misrepresentations. Appellant also alleges that the contract as a whole is rendered void because he was fraudulently induced into entering into the margin agreement and customer option agreement. He contends that he told Piper, Jaffray & Hopwood that he did not want to invest in any agreements which could subject him to unlimited liability and he was reassured that these agreements would not result in unlimited liability.

Because appellant claims he was induced fraudulently into signing the agreements through Piper, Jaffray & Hopwood's misrepresentations, he contends the contracts are void from their inception and consequently the arbitration clauses are also void. Therefore, when the question of contract validity arises, it should be the task of the courts and not arbitration, to decide the issue.

Section 4 of the Act provides one of the few times when a contract containing an arbitration clause can be addressed by a court:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. [Emphasis added.]

The United States Supreme Court has discussed the issue of who is to determine issues involving arbitration and the Uniform Arbitration Act in Prima Paint Corp. v. Flood & Conklin Mfg. Co. (1967), 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270. The Supreme Court looked to the Uniform Arbitration Act for guidance, recalling

5

that section 4 allows for judicial intervention in cases where the validity of the arbitration clause is at issue.

> Under section 4, . . . the federal court is instructed to order arbitration to proceed once it is satisfied that "the making of the agreement for arbitration or the failure to comply [with the arbitration agreement] is not in issue." Accordingly, if the claim is fraud in the inducement of the arbitration clause itself--an issue which goes to the "making" of the agreement to arbitrate--the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

Prima Paint, 388 U.S. at 403-404, 87 S.Ct. at 1806, 18 L.Ed.2d at 1277.

The issue is the same here. There is a question of whether the agreements between Larsen and Piper, Jaffray & Hopwood are void for fraud in the inducement. Prima Paint has specifically held that issues which address fraud in the inducement are issues to be decided in arbitration. Appellant here does dispute the validity of the arbitration clause, but only in connection with the contract as a whole.

We have addressed the application of the Uniform Arbitration Act in state courts in Passage v. Prudential-Bache Securities, Inc. (Mont. 1986), 727 P.2d 1298, 43 St.Rep. 1532, cert. denied, 480 U.S. 905 (1987). We were faced with the same issue in Passage of whether the clause requiring arbitration where a dispute of the contract arises is valid if the investor did not specifically consent to arbitration. We held that the arbitration clause was valid and the investors were subject to its contents. The same is true in the instant case.

Larsen cannot claim that he was unaware of the financial risks involved in investing in uncovered put agreements. The "level four and level five agreements" which explain the risks involved were

set out separately from the margin and option agreements themselves and required a separate signing by the investor.

We hold that the District Court properly determined that the issue of fraud in the inducement to the execution of the contract generally is to be decided by arbitration. Appellant cannot look for the court to determine the validity of the contract generally for the issue of fraud in the inducement, but only if the validity of the arbitration clause is at issue.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____

_____
Justices

7