No. 92-539

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

LEROY E. MUESKE,

    Plaintiff and Respondent,

vs.

PIPER, JAFFRAY & HOPWOOD, INCORPORATED,
JOHN LAWRENCE SCHULTZ, TERRAN FINANCIAL
GROUP, INC., TERRAN SECURITIES, INC.,
TERRAN PARTNERS 1, DANIEL E. HALLIGAN,
RONALD G. HEPPNER AND MAURICE F. BOLGEN,

    Defendants and Appellants.



APPEAL FROM:   District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        John G. Crist and James L. Jones, Dorsey & Whitney,
Billings, Montana

    For Respondent:

        Daniel R. Sweeney, Butte, Montana; A. Clifford
Edwards and Kevin M. Funyak, Edwards Law Firm,
Billings, Montana

Submitted on Briefs:  March 18, 1993

Decided: August 27, 1993

Filed:

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Defendant, Piper, Jaffray & Hopwood, Incorporated (Piper, Jaffray & Hopwood), appeals the Order of the District Court of the Second Judicial District, Silver Bow County, which denied its Motion to Compel Arbitration in an action brought by plaintiff alleging negligence and violations of the Montana Securities Act in relation to investments purchased through Piper, Jaffray & Hopwood. We affirm.

Piper, Jaffray & Hopwood has raised several questions on appeal including the correctness of the District Court's findings of constructive fraud, admissions against interest of Piper, Jaffray & Hopwood's employees and the plaintiff's intent to be bound by a Margin Agreement. However, the District Court stated that these factual findings made by the court are not the law of the case. The sole issue before the District Court in the evidentiary hearing was the validity of the arbitration clause Piper, Jaffray & Hopwood sought to enforce. The sole issue for our review is:

Does Piper, Jaffray & Hopwood's failure to comply with the rules of the New York Stock Exchange and the National Association of Securities Dealers render the predispute arbitration clause within Piper, Jaffray & Hopwood's Margin Agreement invalid?

The following findings of fact of the District Court and testimony presented provide the foundation for our review: Leroy E. Mueske (Mueske) operated a dental practice in Butte, Montana. He contacted defendant John Lawrence Schultz (Schultz) who was a

2

broker employed by Piper, Jaffray & Hopwood. On September 13, 1989, Mueske purchased one unit of Terran Partners I limited partnership through Schultz.

On November 8, 1989, Schultz obtained Mueske's signature on a "Margin Agreement" with Piper, Jaffray & Hopwood. The Margin Agreement contained the following extensive provision with regard to arbitration on the last page of the Margin Agreement just above the signature line on which Mueske signed:

> 11. Customer Agrees to Arbitrate.
> * Arbitration is final and binding on the parties.
> * The parties are waiving their right to seek remedies in court, including the right to jury trial.
> * Pre-arbitration discovery is generally more limited than and different from court proceedings.
> * The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.
> * The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.
>
> I agree to arbitrate any disputes between PJH and me. I specifically agree and recognize that all controversies which may arise between PJH its agents, representatives or employees and me concerning any transaction, account or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on, or subsequent to the date hereof, shall be determined by arbitration to the full extent provided by law. <u>Such arbitration shall be in accordance with the rules then in effect, of the Arbitration Committee of the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc.</u> as I may elect. I authorize PJH, if I do not make such election by registered mail addressed to PJH at its main office within 15 days after receipt of notification form PJH requesting such election, to make such election on my behalf. (Emphasis supplied.)

3

On December 26, 1989, again through Schultz, Mueske purchased additional units of the Terran investments for $50,000. On August 23, 1990, the Securities Department of the State Auditor's office sought a cease and desist order of all the named defendants in this action, except Piper, Jaffray & Hopwood, based on fraud and misrepresentation to the Terran investors.

Mueske contends that he lost his entire $75,000 investment in the Terran investments. Mueske brought this action against Piper, Jaffray & Hopwood concerning the Terran transactions. Piper, Jaffray & Hopwood filed a Motion to Compel Arbitration based on the above-outlined arbitration clause in the Margin Agreement.

After a hearing on Piper, Jaffray & Hopwood's motion, the District Court concluded that the arbitration clause was severable from the Margin Agreement as a whole based on incorporated choice of law provisions relating solely to arbitration requirements and procedures. In adjudicating the validity of the arbitration clause, the court relied on the "doctrine of incorporation of extrinsic documents" where reference is made within the contract to such documents. The arbitration clause contains specific language, which provides that arbitration shall be in accordance with the rules then in effect of the New York Stock Exchange, Inc. (NYSE) and the National Association of Securities Dealers, Inc. (NASD). The rules of the NYSE and NASD were thus incorporated into the contract.

The stipulation by Piper, Jaffray & Hopwood that it did not fully comply with NASD Rules of Fair Practice, Art. III, Sec. 21,

4

and NYSE Rule 637 is crucial to the District Court's conclusion that the arbitration clause was invalid. The specific section of NASD Section 21 with which Piper, Jaffray & Hopwood did not comply provides:

**Requirements When Using Predispute Arbitration Agreements With Customers**

(f) . . . (3) <u>A copy of the agreement containing any such clause shall be given to the customer who shall acknowledge receipt thereof on the agreement or on a separate document</u>. (Emphasis supplied.)

NASD Manual--Rules of Fair Practice (CCH) ¶ 2171, Art. III, Sec. 21(f)(3) (1991). The District Court concluded that compliance with the above rule was a condition precedent to a valid arbitration clause, stating:

. . . [Piper, Jaffray & Hopwood] . . . has <u>clear</u>, mandated obligations of disclosure regarding the use of pre-dispute arbitration clauses. Failure to comply with such rules is a failure to abide by the explicitly incorporated terms of the agreement.

This Court finds that the May 10, 1989 changes in the rules incorporated within the arbitration clause were deliberate and purposeful actions of the Securities Exchange Commission which require proper recognition from the Court. . . .

. . .

[Piper, Jaffray & Hopwood's] failure to adequately correct its procedures and amend its account forms to reflect the new disclosure requirements is a failure to provide the Plaintiff with due and proper notice/disclosure as determined by the Securities and Exchange Commission as evidenced by the May 10, 1989 adoption of rule changes.

The District Court further noted that the burden of showing satisfaction of the notice/disclosure requirements was on Piper, Jaffray & Hopwood and that Piper, Jaffray & Hopwood had failed to show that Mueske had received a copy of the agreement or that he

5

had acknowledged receipt of a copy of the agreement. The court then stated that the requirements are not unduly burdensome, but that even if they were, Piper, Jaffray & Hopwood nevertheless designated the applicable rules and was bound by them.

Piper, Jaffray & Hopwood contends that the District Court incorrectly concluded that the terms of the arbitration clause clearly establish a choice of law election to be bound by the rules of the NYSE or the NASD. They contend this was wrong for three reasons: (1) Piper, Jaffray & Hopwood's minor variance from the industry self-regulating rule did not prejudice Mueske, (2) the arbitration clause is not a choice of law provision for the purposes of determining what law governs the provision's enforceability, and (3) nothing in the NASD rules mandates that the clause is void if the rules are not followed.

First, we agree with the District Court that Piper, Jaffray & Hopwood's noncompliance with the rules relating to disclosure and notice is not a "minor" triviality. The District Court noted that the changes in the NYSE and NASD rules, which were incorporated in the Piper, Jaffray & Hopwood arbitration clause, resulted from deliberate and purposeful actions of the Securities and Exchange Commission (SEC) which require proper recognition from the court. The key question is whether the arbitration clause is a choice of law provision for the purposes of determining what law governs the validity of the arbitration clause. We will uphold the District Court's conclusions of law if they are correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601,

603.

Piper, Jaffray & Hopwood claims that the NASD rules control only the arbitration *process*, not the validity of the clause itself. As noted by Piper, Jaffray & Hopwood, the last paragraph of the arbitration clause as reprinted above provides in the first two sentences that the parties are to arbitrate all disputes to the "full extent provided by law." As further noted by Piper, Jaffray & Hopwood, no reference is made in the first two sentences to NYSE or NASD rules--it is only further along in the clause (in the third sentence) that it provides that any arbitration shall be in accordance with the rules of the NASD or NYSE. Piper, Jaffray & Hopwood admits that it did not strictly comply with all the requirements of NASD Section 21. Mueske contends that it is inconsistent for Piper, Jaffray & Hopwood to argue that the arbitration clause should be found valid and strictly enforced while at the same time argue that substantial compliance--not strict compliance--with the requirements of NASD Section 21 is sufficient.

The parties agree that the Federal Arbitration Act (FAA) controls here. The FAA provides that an agreement to arbitrate is valid except where grounds exist at law or in equity to revoke the contract. 9 U.S.C. § 2 (1988). A district court properly adjudicates the validity of an arbitration agreement when a party contests the validity of an arbitration clause within a contract, but does not contest the validity of the contract as a whole. Larsen v. Opie (1989), 237 Mont. 108, 111-12, 771 P.2d 977, 979-80

7

(citing Prima Paint Corp. v. Flood & Conklin Mfg. Co. (1967), 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270). Federal policy behind the FAA is designed to ensure enforceability of private agreements to arbitrate. Volt Information Sciences, Inc. v. Board of Trustees (1989), 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488. Allowing enforcement of private agreements to arbitrate gives effect to the contractual rights and expectations of the parties, without ravaging the policies behind the FAA. Volt, 489 U.S. at 479, 109 S.Ct. at 1255-56, 103 L.Ed.2d at 500.

In Audit Services v. Frontier-West, Inc. (1992), 252 Mont. 142, 148, 827 P.2d 1242, 1246, we said that "[a] state court may rely on state contract law as long as it effectuates the policy underlying federal labor legislation" and applies federal substantive law. The same holds true for determining the validity of an arbitration clause coming under the guidelines and requirements of federal arbitration legislation.

Based on the language in Volt, a district court's goal, therefore, should be to give effect to the contractual rights and expectations of the parties without running contrary to the policies behind the FAA. Although the policy behind the FAA is to encourage and enforce arbitration agreements, that extends only to valid arbitration agreements. The court could find the agreement invalid according to the law the parties have chosen to apply, so long as the chosen law is not contrary to the FAA and the legitimate rights and expectations of the parties. Here the District Court determined that Piper, Jaffray & Hopwood's

8

arbitration clause was invalid by enforcing the provision of the arbitration clause that provided for application of NASD and NYSE rules as a choice of law provision.

The self-regulating securities industry, through the Securities Industry Conference on Arbitration (SICA), developed rules relating to arbitration and arbitrability for its own use, pursuant to § 19(b)(1) of the Securities Exchange Act of 1934. Order Approving Proposed Rule Changes by NYSE, NASD and AMEX Relating to the Arbitration Process and the Use of Predispute Arbitration Clauses, Exchange Act Release No. 34-26805 (1989), 54 Fed. Reg. 21144. SICA was formed in 1977 by the securities industry in response to the SEC's request for a review of then-existing arbitration procedures as an alternative to the implementation of the SEC's own proposals to establish a system for dispute resolution between broker/dealers and their customrs. Id., 54 Fed. Reg. at 21145. This resulted in a Uniform Code of Arbitration. In September of 1987, after reviewing industry-sponsored arbitration, the SEC advised SICA of its views regarding the need for changes to the Uniform Code of Arbitration. Id., 54 Fed. Reg. at 21145. After that time, SICA and the SEC met regularly to work out proposals in response to SEC concerns. Id., 54 Fed. Reg. at 21145. NYSE Rule 637 and NASD Section 21 were developed by the self-regulating organizations in response to SEC concerns.

NYSE Rule 637 and NASD Section 21 are included in the rules adopted by the SEC. They were specifically designed to improve

disclosure to customers in account opening agreements and to restrict the content of the arbitration clauses. Id., 54 Fed. Reg. at 21153. Notice of the proposed changes was given in Securities Exchange Act releases and by publication in the Federal Register. See, e.g., Proposed Rule Changes by NYSE, Exchange Act Release No. 34-26474 (1989), 54 Fed. Reg. 3883. After reviewing the filings and the comments received in response to notice, the SEC determined that the proposed rule changes were consistent with the requirements of the Securities Exchange Act. Exchange Act Release No. 34-26805, 54 Fed. Reg. at 21155. One industry member commented that the new rules should enhance investor confidence in the system. Id., 54 Fed. Reg. at 21155. The SEC approved the NYSE and NASD rules discussed above on May 10, 1989, and NYSE Rule 637 and NASD Section 21 became effective September 13, 1989. Id., 54 Fed. Reg. at 21155, n.61.

One of the most significant changes in the rules is the level of disclosure and the emphasis on disclosure of arbitration clauses in agreements such as Piper, Jaffray & Hopwood's Margin Agreement. In its order approving the changes, the SEC stated:

> The Commission welcomes the changes in SRO arbitration heralded by these proposals, and the cooperative effort that produced them. These rules represent several years of effort by SICA. They represent the promise of the SROs to maintain fair and efficient forums for the arbitration of disputes between members and investors. The Commission believes that the proposed rules appropriately balance the need to strengthen investor confidence in the arbitration systems at the SROs, both by improving the procedures for administering the arbitrations and by creating clear obligations regarding the use by SRO members of predispute arbitration clauses, with the need to maintain arbitration as a form of dispute resolution that provides for equitable and efficient administration of justice. (Emphasis supplied.)

10

Exchange Act Release No. 34-26805, 54 Fed. Reg. at 21155.

Congress established a self-regulatory scheme for the securities industry. This scheme of self-regulation involves SEC approval of rules developed by industry members. In approving the new rules, the SEC stated that the rule changes of the NYSE and NASD "dynamically advance the public interest in SRO arbitration . . . [and] we conclude that these rules are designed to prevent fraudulent and manipulative practices, promote just and equitable principles of trade and in general, protect investors and the public interest consistent with sections 6(b)(5) and 15A(b)(6) [of the SEA]." Id., 54 Fed. Reg. at 21155.

The District Court's decision to include the NASD and NYSE rules in the contract as a choice of law provision applicable to the entire arbitration clause is reasonable. The SEC would not approve the NYSE and NASD rules without the disclosure provision requiring a signature for the arbitration agreement and requiring that a copy be given to the investor. Exchange Act Release No. 34-26805, 54 Fed. Reg. at 21144. The disclosure requirements of the rules were intended to further the purpose of the FAA in enforcing arbitration agreements, but only when the agreements are fully disclosed to the investor.

As the drafter of the arbitration clause, Piper, Jaffray & Hopwood should have specified therein if it had intended to submit disputes to arbitration under the terms of the NASD and NYSE rules but did not intend to have the determination of validity of the arbitration agreement made by using the same rules. This is

11

particularly important where the NASD and NYSE rules include sections which specify procedures for disclosure of arbitration clauses to investors and where the SEC has stressed the importance of the disclosure procedures and specifically required the industry to include them.

"Arbitration clauses are creatures of contract and, therefore, principles of contract interpretation are applicable." Frates v. Edward D. Jones & Co. (1988), 233 Mont. 377, 382, 760 P.2d 748, 752. By not specifically stating in the arbitration clause the law which will govern a determination of validity of the clause, Piper, Jaffray & Hopwood has created an ambiguity. When ambiguities exist, general rules of contract interpretation apply to determine the intent of the parties.

Uncertain terms in a contract are to be construed against the party causing the uncertainty. Section 28-3-206, MCA. See also Rumph v. Dale Edwards, Inc. (1979), 183 Mont. 359, 600 P.2d 163, 169. Any ambiguity in the arbitration clause is thus to be construed strictly against Piper, Jaffray & Hopwood as the drafter of the contract. Frates, 760 P.2d at 752.

Further, the intention of the parties must be determined by reading the instrument in full and not by isolating words and phrases as Piper, Jaffray & Hopwood urges the Court to do here. Rumph, 600 P.2d at 168.

> It is a well-established principle of contractual construction that in interpreting a written instrument, the court will not isolate certain phrases of the instrument to garner the intent of the parties, but will grasp the instrument by its four corners and in the light of the entire instrument, ascertain the paramount and

12

> guiding intent of the parties. Mere isolated tracts, clauses and words will not be allowed to prevail over the general language utilized in the instrument. . . . Particular clauses of the agreement are subordinate to the general intent of the contract. . . .

Rumph, 600 P.2d at 168 (citing § 28-3-307, MCA).

Piper, Jaffray & Hopwood's arbitration clause incorporates the rules of the NYSE and NASD as controlling law. The arbitration clause does not include an exception for allowing other law to govern determinations of validity. Applying the general rules of contract interpretation set forth above, we conclude that those rules, along with the public policy considerations expressed by the SEC, direct that the validity of the arbitration clause be determined according to the incorporated controlling law--the NYSE and NASD rules--unless such rules contravene the substantive law of the FAA.

We hold Piper, Jaffray & Hopwood's failure to comply with NYSE and NASD rules renders the predispute arbitration clause within Piper, Jaffray & Hopwood's Margin Agreement invalid.

Affirmed and remanded for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

13

Hon. R. C. McDonough, Retired
Justice, sitting in place of
Justice Karla M. Gray

14

Justice James C. Nelson respectfully dissents.

The opinion of the Court states that when Piper, Jaffray & Hopwood, Inc. (Piper) drafted the Margin Agreement at issue, which included an arbitration clause, Piper included a choice of law provision.[1] This "choice of law" provision was the National Association of Security Dealers (NASD) rules. The opinion of the Court calls the NASD rules in this case "controlling law".

Although the Securities and Exchange Commission (SEC) has some power over the NASD, the NASD is a private, independent, self-regulating organization. The SEC did direct the NASD to implement rules regarding arbitration. Essentially, the SEC allowed the NASD to promulgate rules, rather than force rules on the group.

The new promulgated rules provided specific directions (Rule 21) for incorporating arbitration provisions into securities agreements. A violation of Rule 21 could result in sanctions by the NASD against the violating dealer.

Here, the Court held that a failure to comply with controlling law incorporated into an arbitration agreement, such as an NASD rule, renders a pre-dispute arbitration clause invalid. However, if the NASD rule is "controlling law", as held by the Court here, then all of the NASD rules should control. The NASD rules provide that a violation of Rule 21 can result in sanctions being issued against the violating dealer. There is no provision for

---

[1] I do not believe that the reference by the District Court or by this Court to the provision at issue as being one of "choice of law" is accurate in the context in which that concept is usually understood.

15

invalidating the arbitration agreement in its entirety.

If there is some legal basis for the Court to determine that a violation of a "choice of law" provision can result in a remedy not provided for by that law, this legal basis should be clearly articulated. If there is no legal basis for allowing this remedy, one should not be artificially created.

For the foregoing reasons, I dissent.

_____
Justice

16

August 27, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

John G. Crist and James L. Jones
Dorsey & Whitney
P.O. Box 7188
Billings, MT  59103


Daniel R. Sweeney
Attorney at Law
P.O. Box 3725
Butte, MT  59702


A. Clifford Edwards and Kevin M. Funyak
Edwards & Paoli
P.O. Box 20039
Billings, MT   59104


John L. McKeon
Attorney at Law
P.O. Box 879
Anaconda, MT  59711


Ronald G. Heppner
431 Grantsdale Rd.
Hamilton, MT  59840


William K. Van Canagan
Datsopoulos, MacDonald & Lind
201 W. Main, Ste. 201
Missoula, MT  59802

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy