JUSTICE LEAPHART,
dissenting.
¶31 I dissent.
*25 ¶32 Vera Parker-Bigback (Bigback) started working at St. Labre as a teacher in 1981. She moved up to St. Labre’s employee assistance counselor in January 1988, and remained in that position until January 1993 when she was terminated. Relying in part on the fact, established through deposition, that her supervisor, Father Emmett Hoffman, had, in 1992, expressed to Bigback his concern that her lifestyle (living with a man not her husband) did not reflect nor conform to Roman Catholic values and principles, Bigback filed suit for discrimination under § 49-2-303(l)(a), MCA, which makes it illegal to terminate an employee on the basis of marital status.
¶33 Bigback was employed by St. Labre pursuant to a written contract by which she agreed to
conform to and abide by all of the moral and religious teachings and beliefs of the Roman Catholic Church and not to engage in any personal conduct or lifestyle which would be at variance with or contrary to the policies of the School and the Diocese of Great Falls-Billings or the moral and religious teachings of the Roman Catholic Church.
¶34 Among other matters, the St. Labre Indian School Educational Employee Manual contains the following statement of policy:

AFFIRMATIVE ACTION

St. Labre complies with Federal and State law regarding discrimination in employment. Applicants for employment shall be considered for employment, and employees shall hold employment, without discrimination because of age, sex, physical or mental handicap or marital status as required by the Montana Human Rights Act and the Federal Law.
¶35 Bigback argued to the District Court that St. Labre, through the statement of nondiscrimination in its Employee Manual, put aside its constitutional shield to the free exercise of religion and consented to be governed by the secular rules regarding discrimination.
¶36 In reviewing St. Labre’s motion for summary judgment, the District Court reviewed St. Labre’s employee manual and the employment contract and noted the express language in the contract requiring Bigback “[t]o conform to and abide by all of the moral and religious teachings and beliefs of the Roman Catholic Church and not to engage in any personal conduct or lifestyle which would be at variance with or contrary to the policies of the School and the Diocese of Great Falls-Billings or the moral and religious teachings of the Roman Catholic Church.” In light of this language, the court held that there is no *26 question but that St. Labre reserved the right to require that Bigback’s personal life conform with Catholic moral and religious teachings. Finally, the court concluded that, even if there were merit to Bigback’s claim of discrimination, the constitutional guarantee of free exercise of religion overrides Bigback’s right to be free from discrimination.
¶37 The District Court erred in interpreting the employment contract as reserving unto St. Labre the right to require that Bigback not cohabit with a man not her spouse. The court’s conclusion is based upon the general contract provision requiring adherence to the moral and religious teachings of the Roman Catholic Church. In its rush to honor the constitutional right to free exercise of religion, however, the court overlooked the more specific provision of the contract that prohibits Bigback from engaging in any conduct or lifestyle which would be at variance with or contrary to the policies of the school. One of the stated policies of the school was that: “Applicants for employment shall be considered for employment, and employees shall hold employment, without discrimination because of... marital status as required by the Montana Human Rights Act and the Federal law.” The contract does not purport to set forth or summarize what is encompassed within the “moral and religious teachings and beliefs” of the Roman Catholic Church. To the extent that the contract’s generally stated moral imperative proscribes cohabitation with a non-spouse, it, at best, results in an ambiguity when read in context of the contract provision incorporating St. Labre’s explicit policy of nondiscrimination on the basis of marital status. Uncertain terms in a contract are to be construed against the party causing the uncertainty. Mueske v. Piper, Jaffary & Hopwood, Inc. (1993), 260 Mont 207, 216, 859 P.2d 444, 449-50. In this case, that party is St. Labre.
¶38 Thus, although the moral teachings of the Church may disapprove of a single person cohabiting with someone of the opposite sex, the Church waived that objection when it drafted a contract allowing Bigback to engage in a lifestyle so long as it was not at variance with the policies of the school. The fact that Bigback, a single woman, was living with a man is not at variance with school policy. Rather, it is entirely consistent with the school’s policy of not discriminating on the basis of marital status.
¶39 The Court’s opinion concludes that Bigback’s termination had nothing to do with her marital status, rather it was based upon her conduct. I disagree. Her conduct was living with someone of the opposite sex. In order to determine whether that conduct offends the *27 teachings of the Catholic Church, one must look to her marital status. If, as here, her marital status is single, then the conduct is offensive to the Church. If she is married, it depends upon to whom she is married. If she is married to the person with whom she cohabits, then the conduct comports with Church teachings. If she is married to someone other than the person with whom she cohabits, then the relationship is adulterous and offends another teaching of the Church. In my view, given Father Hoffman’s expressed disapproval of Bigback living with a man without the benefit of marriage, her termination was about marital status.
¶40 The District Court invoked Miller v. Catholic Diocese of Great Falls (1986), 224 Mont. 113, 728 P.2d 794, for the proposition that the constitutional guarantee of free exercise of religion “shield from court review the conduct of religious entities to the extent such conduct is inextricably intertwined with the mission and teachings of the particular church.” In Miller, this Court determined that it could not resolve the issue of good faith without examining the school’s discipline policy as applied to classroom instruction and that “[s]uch an examination of necessity would impinge upon elements of the teaching of religion, or the free exercise of religion.” Miller, 224 Mont. at 118, 728 P.2d at 797.
¶41 In contrast to Miller, the issue presented by Bigback can be resolved without examining or impinging upon the religious policies of the Church. The question is purely one of contract. The District Court should have denied the motion for summary judgment on the basis of contract law and should not have reached the constitutional issue of free exercise of religion. Had the District Court denied summary judgment and allowed Bigback to proceed with her discrimination claim, the court would not have interfered with the free exercise of religion. Rather it would have permitted resolution of an issue as to whether the Church was bound to honor the express terms of its own contract and employment policy.
¶42 I would hold that the District Court erred in granting summary judgment to St. Labre. I would reverse the summary judgment, remand and allow Bigback to proceed with her discrimination claim . As to the retaliation claim, I concur with the Court’s resolution of that issue.
JUSTICE NELSON joins in the foregoing dissent of JUSTICE LEAPHART.