No. 99-673

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 269

WILLIAM J. KINGSTON, III and

VIRGINIA L. KINGSTON,

Plaintiffs and Appellants,

v.

AMERITRADE, INC., a Nebraska corporation,

Defendant and Respondent.

APPEAL FROM: District Court of the Second Judicial District,

In and for the County of Silver Bow,

The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

William P. Joyce, Joyce & Starin, Butte, Montana

For Respondent:

William M. O'Leary, Corette, Pohlman & Kebe, Butte, Montana

Submitted on Briefs: June 1, 2000
Decided: October 26, 2000

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1 William and Virginia Kingston appeal from the October 19, 1999, order of the Second Judicial District Court, Silver Bow County, granting Ameritrade's combined motion to dismiss and to compel arbitration. We reverse and remand for further proceedings consistent with this opinion.

¶2 The sole issue presented on appeal is whether the District Court erred when it concluded that the arbitration provision in the Ameritrade contract is valid and enforceable and, therefore, the Kingstons are compelled to arbitrate their dispute with Ameritrade.

## BACKGROUND

¶3 In January 1998 the Kingstons opened a cash stock brokerage account with Ameritrade, Inc., an on-line brokerage firm. The booklet provided with the application packet promised the ability to access one's on-line account at any time. William Kingston signed the application form on December 30, 1997, and Virginia Kingston signed the same application on January 4, 1998. The Kingstons began to utilize their account to trade stocks over the Internet. Based on the allegations in Kingstons' amended complaint, because of failures with the Ameritrade system on November 30, 1998, the Kingstons were unable to place an order to sell certain stocks. The Kingstons contend that, as a result of the inability to sell their stock, they lost $32,652.87 in profits, which further caused William Kingston severe emotional distress, mental pain, and anxiety.

¶4 The Kingstons filed suit against Ameritrade, Inc., on March 24, 1999, seeking compensation for lost investment income, and the emotional distress, mental pain, and anxiety suffered by William Kingston. On April 28, 1999, Ameritrade filed a Combined Motion to Compel Arbitration and Dismiss. Both parties subsequently filed briefs and affidavits relative to the combined motions.

¶5 At issue are the terms and conditions relevant to the account application signed by the Kingstons. The account application signed and submitted by the Kingstons includes the

following:

> I have received and read the terms and conditions that will govern my account. I agree to be bound by these terms and conditions, as amended from time to time, and request a cash and cash margin account to be opened in the name(s) set forth below.
>
> **This brokerage account agreement contains pre-dispute arbitration clauses in Paragraphs 6 and 7 of the Terms and Conditions section.**

¶6 The Kingstons acknowledge receiving and reading the application. They also acknowledge receiving a handbook from Ameritrade. Language in the handbook relating to opening an account stated that to open a new account, "Simply fill out the brief application we have enclosed with this booklet. You also may use our interactive application found at our website . . . . Be sure to enclose your initial equity deposit (minimum $2,000)." There is no mention of other terms and conditions in the handbook. The Kingstons contend that these two documents are the only documents they received from Ameritrade. Ameritrade contends that the terms and conditions noted in the application refer to terms and conditions found in the document titled "Terms and Conditions" which sets forth specific arbitration requirements. These arbitration disclosures state that arbitration is binding, the parties are waiving their right to seek remedies in the courts, that the right to appeal is limited, and other agreements.[1] The Kingstons, by affidavit, deny that they ever received this document. The Kingstons also claim that no terms and conditions were listed on the Ameritrade website.

¶7 In response to the complaint filed by the Kingstons, Ameritrade filed a motion to dismiss pursuant to Rule 12(b)(1), M.R.Civ.P., and a motion to compel arbitration pursuant to § 27-5-115, MCA. Rule 12(b)(1), M.R.Civ.P., provides in relevant part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter.

Section 27-5-115, MCA (1997), provides in relevant part:

**Proceedings to Compel or Stay Arbitration.** (1) On the application of a party showing an agreement described in 27-5-114 and the opposing party's refusal to arbitrate, the district court shall order the parties to proceed with arbitration; *but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of that issue raised and shall order arbitration if it finds for the applying party or deny the application if it finds for the opposing party*.

(2) On application, the district court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. *Such an issue, when in substantial and bona fide dispute, shall be immediately and summarily tried* and the stay ordered if the court finds for the applying party. If the court finds for the opposing party, it shall order the parties to proceed to arbitration.

(Emphasis added.)

¶8 The District Court heard oral arguments on August 25, 1999, and granted Ameritrade's motion on October 18, 1999. The District Court concluded, as a matter of law, it did not have subject matter jurisdiction over the Kingstons' claims, and thus dismissed the matter and compelled arbitration. The Kingstons appeal.

## STANDARD OF REVIEW

¶9 The District Court's determination that it did not have jurisdiction over this case is a conclusion of law. *Hilands Golf Club v. Ashmore* (1996), 277 Mont. 324, 328, 922 P.2d 469, 472. We review a district court's conclusion of law regarding arbitrability to determine if it is correct. *Ratchye v. Lucas,* 1998 MT 87, ¶ 14, 288 Mont. 345, ¶ 14, 957 P.2d 1128, ¶ 14. When reviewing a dismissal of a claim, we take all allegations of fact by the nonmoving party as true. *Hilands,* 277 Mont. at 328, 922 P.2d at 472. In this case, we conclude that the District Court erred in its legal conclusion that it lacked subject matter jurisdiction over whether an arbitration agreement existed.

## DISCUSSION

¶10 Did the District Court err when it concluded that the arbitration provision in the Ameritrade contract is valid and enforceable and, therefore, the Kingstons are compelled to arbitrate their dispute with Ameritrade?

¶11 Ameritrade argues that the District Court correctly found that the Kingston's claims were preempted by a requirement to arbitrate, and thus the District Court lacked subject matter jurisdiction to hear the claim. The Kingstons, on the other hand, maintain that the arbitration clause in the Ameritrade contract does not preempt their claims because there is an ambiguity in what specific terms and conditions apply to the arbitration provision contained in the contract.

¶12 The Kingstons contend that under § 27-5-115, MCA, there is a "substantial and bona fide dispute" over whether there has been an agreement to arbitrate. Ameritrade responds that the District Court's lack of jurisdiction, under Rule 12(b)(1), M.R.Civ.P., is premised on the fact that the Kingston's dispute is subject to the arbitration provision they accepted when signing their agreement to open a brokerage account. The District Court concluded that it must grant Ameritrade's motion unless the Kingstons deny the existence of the arbitration agreement. The District Court then concluded that the Kingstons denied the existence of the contract as a whole, and their claim could not be considered to be solely a denial of the arbitration agreement. We disagree.

¶13 The Federal Arbitration Act (FAA) and similar state law governs the present dispute. 9 U.S.C. § 1, et seq., §§ 27-5-114 and -115, MCA. The FAA provides that an agreement to arbitrate is valid except where grounds exist at law or in equity to revoke the contract. 9 U. S.C. § 2. Thus, the FAA reverses the longtime judicial hostility to arbitration agreements and puts them on the same footing as other contract provisions. *Vukasin v. D.A. Davidson & Co.* (1990), 241 Mont. 126, 128-29, 785 P.2d 713, 715; *Cohen v. Wedbush, Noble, Cooke, Inc.,* (9th Cir. 1988), 841 F.2d 282, 285; *Scherk v. Alberto-Culver Co.* (1974), 417 U.S. 506, 510, 94 S. Ct. 2449, 2453, 41 L. Ed. 2d 270. Montana law also requires the enforcement of predispute arbitration clauses "except upon grounds that exist at law or in equity for the revocation of a contract." Section 27-5-114(2), MCA. Generally, these provisions require a court to follow a liberal policy in enforcing arbitration agreements, including resolving any doubts concerning the scope of arbitrable issues in favor of arbitration. *See Vukasin,* 241 Mont. at 133, 785 P.2d at 718. Yet, under the provisions of § 27-5-115, MCA, a district court may not order arbitration if there is a substantial and bona fide dispute over whether there exists an agreement to arbitrate.

¶14 Ameritrade contends that the Kingstons must submit to arbitration, pursuant to the agreement they signed, and are precluded from bringing suit in district court. The Kingstons contend that they did not knowingly agree to nonbinding arbitration as the exclusive method to resolve this dispute when they signed the agreement. Essentially they

contend that the critical "Terms and Conditions" were never provided to them, and no part of the contract stated that they were subjecting themselves to binding arbitration or foregoing their right to trial in the district court. Thus, the Kingstons contend that the District Court has authority to determine the threshold question of whether a valid agreement to arbitrate was even entered into by Ameritrade and the Kingstons.

¶15 The federal policy under the FAA is designed to ensure the enforceability of private agreements to arbitrate. *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Univ.* (1989), 489 U.S. 468, 472, 109 S. Ct. 1248, 1252, 103 L. Ed. 2d 488; *Doctor's Assoc., Inc. v. Casarotto* (1996), 517 U.S. 681, 116 S. Ct. 1652, 134 L. Ed. 2d 902. Thus, a district court may only properly adjudicate the validity of an arbitration agreement when a party contests the validity of an arbitration clause within a contract, but does not contest the validity of the contract as a whole. *See Larsen v. Opie* (1989), 237 Mont. 108, 111-12, 771 P.2d 977, 979-80; *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.* (1967), 388 U.S. 395, 403-04, 87 S. Ct. 1801, 1806, 18 L. Ed. 2d 1270.

¶16 Although the policy behind the FAA is to encourage and enforce arbitration agreements, enforcement of arbitration agreements extends only to valid arbitration agreements. *See Mueske v. Piper, Jaffray & Hopwood, Inc.* (1993), 260 Mont. 207, 213, 859 P.2d 444, 448. In the instant case, the District Court erred in not fully addressing whether a valid arbitration agreement exists.

¶17 We have previously affirmed district court orders compelling arbitration under a variety of scenarios. *See Larsen*, 237 Mont. at 112, 771 P.2d at 980 (affirming order compelling arbitration notwithstanding plaintiff's claim that he did not specifically consent to the arbitration clause although he did not dispute executing the contract containing the clause); *Passage v. Prudential-Bache Sec.* (1986), 223 Mont. at 64, 727 P.2d at 1300 (affirming order compelling arbitration where the investor challenged an arbitration clause in the brokerage contract claiming he didn't read the documents before signing). Yet, a motion to compel arbitration is appropriately denied where the arbitration clause itself is questioned. *See Vukasin,* 241 Mont. at 131, 785 P.2d at 717.

¶18 In summary, the critical question a district court must decide when confronting this issue is whether the contesting party is disputing the validity of the arbitration clause itself. Two previous cases guide us in determining what constitutes an appropriate denial of a motion to compel arbitration when the existence of an arbitration clause is in question. First, in *Mueske*, we upheld the district court's refusal to grant a motion to compel

arbitration because the arbitration clause itself required the use of specific notice rules in the formation of the arbitration agreement, and the brokerage failed to use such rules. *Mueske,* 260 Mont. at 212, 859 P.2d at 447. By failing to use the specific notice rules when forming the arbitration agreement, the broker could not invoke the arbitration clause and compel arbitration during subsequent litigation. The failure of the broker to follow these rules required the invalidation of the arbitration clause, but not invalidation of the contract as a whole. *Mueske*, 260 Mont at 216, 859 P.2d at 450. Additionally, in *Frates v. Edward D. Jones and Co.* (1988), 233 Mont. 377, 760 P.2d 748, a motion to compel arbitration was properly denied by the district court because the arbitration clause was ambiguous in its construction and, therefore, could not be read to apply to disputes arising before the arbitration agreement was signed. In *Mueske* and *Frates*, there was a discreet question as to whether a valid arbitration clause existed in an otherwise valid contract.

¶19 The issue presented by the Kingstons is substantially similar. Taking all allegations of the Plaintiffs as true, it appears that the Kingstons never received the terms and conditions which contained the mandatory arbitration provisions. In the instant case, the Kingstons signed a contract with Ameritrade. They do not dispute the existence of the contract itself; in fact they traded stocks pursuant to their contract with Ameritrade. Rather, they claim that, though they signed a valid contract, there was no valid agreement to arbitrate in the contract. By their allegations, they were not provided with any terms and conditions applicable to an agreement to arbitrate, no specific terms in the contract they signed required binding arbitration, and no terms relevant to an agreement to arbitrate were listed on the Ameritrade website.

¶20 By alleging that they never received the specific terms and conditions, and that the terms and conditions were not listed on Ameritrade's website, the Kingstons have identified a substantial ambiguity in the nature of the terms and conditions of the arbitration clause. Certainly Kingstons were on notice that there was some form of arbitration that governed the agreement. The specific language above their signature on the application states that "[t]his brokerage account agreement contains pre-dispute arbitration clauses in Paragraphs 6 and 7 of the Terms and Conditions section." However, they had no indication that they were agreeing to *binding* arbitration or that arbitration was their *exclusive* remedy in resolving any disputes with Ameritrade. These are critical factors which go to the heart of the arbitration provision that Ameritrade attempts to enforce as binding and impose on the Kingstons. The provisions in the terms and conditions are the operative clauses which deny Kingstons access to the courts. We have previously recognized that uncertain terms in a contract are to be construed strictly against

the party causing the uncertainty. *Frates*, 233 Mont. at 382, 760 P.2d at 752; *Mueske*, 260 Mont. at 216, 859 P.2d at 449-50. Consequently, we conclude that there is a substantial and bona fide dispute over the arbitration agreement that cannot be overcome by the general federal policy encouraging upholding agreements to arbitrate. Thus, the District Court erred in granting Ameritrade's combined motion to dismiss and compel arbitration.

¶21 Ameritrade urges us to conclude that the Kingstons dispute the formation of the entire contract because they do not mention the arbitration agreement in their original pleading. However, this claim begs the question as to whether a valid arbitration clause exists. The Kingstons apparently did not articulate the opposition to an arbitration clause because they claim that they did not know that such a clause existed requiring them to submit to "binding arbitration."

¶22 The Kingstons further argue that the contract is one of adhesion, which requires analysis from the consumer's perspective regarding reasonable expectations for an arbitration clause to be enforceable. Since we have concluded that the District Court erred as a matter of law in concluding that there was a binding arbitration agreement, we need not reach the issue relating to adhesion.

¶23 Reversed and remanded for further proceedings consistent with this opinion.

/S/ JIM REGNIER

We Concur:

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER

1. The booklet entitled "Terms and Conditions," five pages of contract language, includes the following, which is printed in bold on the first page:

## 6. ARBITRATION DISCLOSURES

(i) Arbitration is final and binding on the parties.

(ii) The Parties are waiving their right to seek remedies in court, including the right to a jury trial.

(iii) Pre-arbitration discovery is generally more limited than and different from court proceedings.

. . . .

I agree that all controversies which may arise between us concerning any transaction, the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, or any other matter shall be determined by arbitration in accordance with the rules of the National Association of Securities Dealers, Inc.