FILED

12/15/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0208

DA 20-0208

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 311

JACKPOT FARMS, INC. a Montana Corporation,

Plaintiff and Appellee,

v.

JOHNS FARMS, INC., a Montana Corporation,

Defendant and Appellant.

APPEAL FROM: District Court of the Ninth Judicial District,
In and For the County of Pondera, Cause No. DV 14-42
Honorable Robert G. Olson, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Robert B. Pfennigs, Heather M. Starnes, Jardine, Stephenson, Blewett &
Weaver, PC, Great Falls, Montana

For Appellee:

Thane P. Johnson, Johnson, Berg & Saxby, PLLP, Kalispell, Montana

Submitted on Briefs: October 7, 2020

Decided: December 15, 2020

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant Johns Farms, Inc., appeals the Ninth Judicial District Court's order providing for dissolution of the Johns Brothers Farms partnership, accounting of the partners' capital accounts, and settlement and distribution of partnership assets. We restate the issues on appeal as follows:

1. *Did the District Court err by concluding that Jerry did not breach his fiduciary duty to Butch and the partnership?*

2. *Did the District Court err in its calculation of the capital account balances for Jerry and Butch?*

3. *Did the District Court err by awarding Jerry the 40-acre parcel in its distribution of partnership assets?*

¶2 We affirm.

## BACKGROUND

¶3 Brothers Jerry Johns and Jule Nathan "Butch" Johns began farming together as a partnership, named Johns Brothers Farm, in 1980. In 1994, each brother formed a corporation to hold their individual interests, with Jerry forming Jackpot Farms, Inc., and Butch forming Johns Farms, Inc. These corporations became the partners in Johns Brothers Farms, each holding a 50% interest in the partnership and entitling each to an equal distribution of partnership assets.[1] Jerry handled the partnership finances and maintained the partnership checkbook.

---

[1] All three businesses conduct and have their principal place of business near Conrad, Montana, in Pondera County. As did the District Court, we refer to the parties and their respective entities generally as "Jerry" and "Butch," unless context requires otherwise.

2

¶4 In 2013, Jerry and Butch mutually determined to dissolve the partnership and distribute the assets between the partners. They agreed to conduct mediation in May of 2013, at which they entered a detailed settlement agreement that distributed a vast majority of partnership property. Jerry and Butch received physical assets (e.g., real property, machinery, and equipment), intangibles (e.g., leased land, water shares and stocks), while leaving a few items unresolved, including a Gheen hydraulic pipe press and parts, 40 acres of land with an associated 19 shares of water stock in the Pondera County Canal and Reservoir Company, and an accounting and settlement of the partners' capital accounts. Each party was provided an interest in "One Tiber Water Share," which allows access to a water tap located on the 40-acre parcel. At the time of mediation, it was generally believed that Butch's capital account reflected excessive draws from the partnership.

¶5 At the mediation, the parties were each represented by counsel and both signed a settlement agreement that day. Dwaine Iverson, an accountant for Jerry, Butch, and the partnership, provided financial information for the settlement discussion but largely assisted Jerry during the mediation. Following the mediation, Butch consulted with James Meier, a Conrad accountant, for further advice regarding Jerry and Butch's capital account balances. Meier's efforts, made in consultation with the parties and their attorneys, resulted in lowering Butch's capital account balance. Meier's review of the partnership's records also revealed that Jerry had drawn partnership funds, since the 1990s, to construct a personal residence on partnership land. At trial, both parties would ultimately agree to work from Meier's findings, as set forth in his written report.

¶6     In July of 2014, Jerry commenced this action to dissolve Johns Brothers Farms, settlement of capital accounts, and for distribution of partnership assets. Jerry sought an ordering compelling sale of the 40-acre parcel to him. Butch answered, requesting an equitable division of the remaining partnership property, an accounting of the partners' capital accounts, and an in-kind award to him of the 40-acre parcel. The action then laid dormant for two years. In October of 2016, the District Court issued a notice of failure to prosecute, subjecting the cause to possible dismissal. Thereafter, in early 2017, Jerry filed an amended complaint seeking dissolution of the partnership, enforcement of the settlement agreement, payment of $123,247.29 to equalize the capital accounts, and distribution of the 40-acre parcel. Butch answered, asserting that the settlement agreement was unenforceable due to a material mistake of fact, requesting equitable distribution of the partnership assets, including distribution of the 40-acre parcel to him, and disputing that he owed money, and demanding that Jerry make payment to equalize the capital accounts.

¶7     The District Court, Hon. Robert G. Olson, presiding, conducted a bench trial on June 4, 2019. Five persons testified: Jerry, Butch, Iverson, Meier, and Gary Bjelland, Butch's attorney during mediation, who had contributed to the settlement agreement. The parties' primary trial contentions concerned Jerry's use of partnership funds for construction of his personal residence and other expenses, such as his alleged use of partnership funds for cell phone bills and maintenance costs on his personal vehicle, and which partner was better suited to receive the 40-acre parcel.

4

¶8 According to Meier's accounting, Jerry's draws equaled $881,194, which included the draws he had taken to construct his personal residence, in the amount of $117,522. The District Court stated "it was agreed by both Butch and Meier" that certain draws by Jerry were properly taken for partnership expenses, totaling $20,824.66, and were deducted from his capital account.[2] The District Court also found Jerry's explanation credible regarding $22,605 paid in wages to his children, and this amount was also deducted, leaving Jerry's negative balance at $837,762.

¶9 Contrary to the general indication expressed during mediation, Meier calculated Butch's draws to be less than Jerry's, totaling $744,235.74. To this sum the District Court added $15,000, a number originally proposed by Bjelland, for Butch's "near exclusive use of the 40 acres," which Butch had conceded during his testimony would be a reasonable assessment. The District Court thus calculated Butch's negative balance to be $759,235.74.

¶10 After trial but prior to the entry of its findings and conclusions, the District Court entered an order rejecting Butch's challenge to the validity of the settlement agreement, concluding the agreement "is a valid and binding contract," and reasoning as follows:

> The settlement agreement resolved a majority of the disputes between the parties. . . . Butch had every right to review whatever financial information he wished prior to settlement. Prior to settlement, he could have done exactly what he did after the settlement, which was hire an accountant to review the financial records of the partnership. . . . Both parties are competent and were

---

[2] The agreed expenses included: $5,734.74 retail (purchase of 4-wheeler), $3,745.92 Salois (irrigation expense), $9,794 Partner Cattle (cattle purchased for partnership), $900 Bliss (partnership repair of 4-wheeler), and $652 Patronage Dividend (in trust account).

5

competent at the time of settlement. Both parties had counsel. Any inequities in the parties' capital accounts were reserved for a later date, which ultimately were the issues tried on June 4, 2019. There was no mutual mistake of fact.

¶11 In March of 2020, the District Court issued its "Findings of Fact, Conclusions of Law and Judgment." The District Court "conclude[d] as a matter of law that Jerry honored his fiduciary obligations to both Butch and the partnership." It discussed the history and equities involved in the parties' claims to the 40-acre parcel, reasoning that the parcel "provides the only viable water source for Jerry's current cattle operation," and that any conflict between the parties and their families arising from joint access to the parcel could be avoided if Jerry would purchase the parcel at the agreed value of $77,000, which the District Court added to Jerry's capital account. After adding $7,750 to Butch's account for receipt of the Gheen pipe press and associated parts and tools, the final accounting of the capital accounts stood at $914,762 and $766,985 for Jerry and Butch, respectively. Thus, the District Court ordered Jerry to pay Butch $73,888.00, or half of the difference between the accounts to equalize them, to settle the partnership business.

¶12 Butch appeals.

**STANDARDS OF REVIEW**

¶13 For equitable proceedings, this Court reviews "all questions of fact arising upon the evidence presented in the record . . . as well as questions of law." Section 3-2-204(5), MCA; *Mont. Digital, LLC v. Trinity Lutheran Church*, 2020 MT 250, ¶ 9, 401 Mont. 482, 473 P.3d 1009 (internal citations omitted). "We review a district court's findings of fact to determine whether the findings are clearly erroneous." *Baltrusch v. Baltrusch*, 2003 MT

6

357, ¶ 23, 319 Mont. 23, 83 P.3d 256 (citing *State v. Perry*, 283 Mont. 34, 36, 938 P.2d 1325, 1327 (1997)). In determining whether the findings are clearly erroneous, we review whether they are supported by substantial evidence. *Baltrusch*, ¶ 23 (citing *Ace Leasing, Inc. v. Boustead*, 2002 MT 213, ¶ 16, 311 Mont. 285, 55 P.3d 371). If supported by substantial evidence, a finding may nonetheless be clearly erroneous if the Court is left with a "definite and firm conviction that a mistake has been committed." *Boustead*, ¶ 16 (citing *Trifad Entertainment v. Anderson*, 2001 MT 227, ¶ 27, 306 Mont. 499, 36 P.3d 363). This Court reviews a district court's conclusions of law for correctness. *Baltrusch*, ¶ 23 (citing *Kingston v. Ameritrade, Inc.*, 2000 MT 269, ¶ 9, 302 Mont. 90, 12 P.3d 929).

**DISCUSSION**

¶14 *1. Did the District Court err by concluding that Jerry did not breach his fiduciary duty to Butch and the partnership?*

¶15 Regarding the issue of fiduciary duty, the District Court found:

> 10. Jerry and Butch operated the partnership similar to many family businesses. The parties trusted each other. Jerry handled the finances. Butch received more cash draws from the partnership. Jerry maintained the partnership checkbook and used partnership monies to pay his own personal expenses on occasion.
>
> 11. There were no attempts made by Jerry to take financial advantage of Butch or the partnership. All cash draws were added to each parties' respective capital account. It follows that partnership funds used by Jerry to build a personal residence must be included in his capital account. Jerry used $114,522.00 [sic][3] of partnership funds to build a personal residence.

---

[3] Representations of the parties and the accounting at trial established the correct amount of the draws taken by Jerry for his personal residence was $117,522.93. This amount was used in the District Court's conclusions of law.

> Using partnership funds to pay for personal expenses is no different than a draw. Therefore, Jerry's capital account should include these costs.
>
> This Court's decision in this respect is bolstered by the fact that Butch did not know partnership funds were being used to build Jerry's personal residence.

The District Court entered this conclusion of law:

> 7. The Court concludes as a matter of law that Jerry honored his fiduciary obligations to both Butch and the partnership. Butch took more cash draws from the partnership. Jerry used the partnership account to pay personal expenses. There was no intent to defraud or deceive. Butch had the right and ability to access the account at any time and chose not to.

¶16 Butch argues that the District Court erred by failing to find that Jerry breached his partnership fiduciary obligations because Jerry "knowingly and intentionally continued to use partnership funds to pay his personal expenses despite explicit agreements to the contrary" with Butch, and "actively concealed his use of partnership funds from Butch for many years." Jerry answers that they operated the business informally as brothers, there was general agreement for their draws and complete access to partnership records, both partners were reimbursed by the partnership for use of personal assets, and there was no intent to deceive or defraud, as determined by the District Court. Acknowledging communication soured between the brothers during the final years of their partnership, Jerry offers that "[a] lack of communication does not equal fraud."

¶17 Partners owe fiduciary duties to the partnership and to their partners. Section 35-10-405(1), MCA (providing for both a duty of loyalty and care); *Wilson v. Wilson*, 64 Mont. 533, 543, 210 P. 896, 899 (1922) (stating that "[p]artners occupy a fiduciary relation toward one another"). A partner must "account to the partnership and hold as trustee for it

any property, profit, or benefit derived" from partnership business and windup, used or appropriated partnership property, or a used or appropriated opportunity without the consent of other partners. Section 35-10-405(2)(a), MCA. This duty is not violated "merely because the partner's conduct furthers the partner's own interest." Section 35-10-405(6), MCA (stating further that "[a] partner may lend money to and transact other business with the partnership"). Partners must discharge their fiduciary duties "consistent with the obligation of good faith and fair dealing." Section 35-10-405(5), MCA.

¶18 The difficulty with Butch's position is that the District Court did not find that the evidence supported it. Crediting Jerry's testimony, it found that, while Jerry exclusively managed the partnership finances, he did not intend to take undue financial advantage to the detriment of Butch or the partnership, and did not manipulate or withhold access to partnership records to conceal his actions. Both brothers testified to a general agreement to take regular draws, and that they occasionally drew partnership funds for payment of personal expenses related to the partnership. There is no doubt Jerry could and should have communicated more forthrightly and clarified his intentions with Butch about the draws he was taking to build his house.[4] And, Butch could have periodically surveyed the partnership records and raised any questions he had about management of the partnership finances, perhaps during annual tax return preparations. However, there was creditable

---

[4] Butch did testify under cross examination that he "knew about the loan with the partnership where the funds went in to building the house where Jerry lives," but only "originally," which he testified was in 1997.

9

substantial evidence to support the District Court's findings and, given the lack of record manipulation by Jerry and the general agreements under which the partners operated during the long life of the partnership, we are not left with a "definite and firm conviction that a mistake has been committed" by the District Court. *Boustead*, ¶ 16 (citing *Trifad*, ¶ 27). Butch does not challenge the District Court's ruling that the parties' settlement agreement, which resolved a vast majority of the dispute, was valid. The partnership records reflected Jerry's draws, the District Court asked careful questions of Meier during the trial to ensure a proper accounting, and Jerry was charged for his draws. While Jerry may have sought to gain an undue advantage by pressing his claim of $123,247 against Butch in the litigation, the process worked as designed: Butch prevailed and Jerry's claim was defeated. Indeed, Jerry owed Butch.

¶19 Therefore, we conclude the District Court did not err in the application of the law of partnership by holding that Jerry did not violate fiduciary duties.

¶20 *2. Did the District Court err in its calculation of the capital account balances for Jerry and Butch?*

¶21 Butch requests re-accounting by arguing that the District Court erred in its calculation of his capital account. Jerry responds that the District Court's calculations were supported by substantial evidence, particularly because Jerry and Butch both relied on Meier's findings regarding the partnership.

¶22 "A partner may maintain an action against the partnership or another partner for legal or equitable relief, including an accounting as to partnership business" to enforce a partner's "right to compel a dissolution and winding up of the partnership business."

10

Section 35-10-409(2)(b)(iii), MCA; 59A Am. Jur. 2d Partnership § 606. Partners are entitled to an accounting of partnership affairs to determine their rights, liabilities, and value of their interests in the partnership. *McCormick v. Brevig*, 2004 MT 179, ¶¶ 48-49, 322 Mont. 112, 96 P.3d 697 (citing 59A Am. Jur. 2d *Partnership* [§ 606]). *See also* § 35-10-401(1), MCA (establishing individual partner accounts); § 35-10-629, MCA (establishing the procedure for settling individual partner accounts). In accounting actions during partnership windup, courts are obligated to conduct a full accounting. *McCormick*, ¶ 49 (internal citation omitted); 59A Am. Jur. 2d *Partnership* § 656.

¶23 Upon winding up, creditors are discharged under § 35-10-629(1), MCA, after which "[t]he partnership shall make a distribution to a partner in an amount equal to that partner's positive account balance," § 35-10-629(2), MCA, or, if necessary, "each partner shall contribute, in the proportion in which the partner shares partnership losses and to the extent the partner is personally liable," the amount necessary to "satisfy partnership obligations," § 35-10-629(3), MCA. Partnership withdrawals from partnership assets, also known as draw accounts, are charged against the appropriate partner's share of partnership distribution. 59A Am. Jur. 2d *Partnership* § 641.

¶24 Butch makes three specific arguments: 1) the District Court improperly assessed Butch $15,000 rent for "exclusive use" of the 40-acre parcel; 2) the District Court failed to credit Butch for certain post-2014 expenses; and 3) the District Court failed to offset against Jerry's alleged breach of fiduciary duty to the partnership and Butch. Because we

have already resolved the question of Jerry's fiduciary duty, we address only the first two arguments.

*Butch's $15,000 Rent Assessment*[5]

¶25     Butch argues that assessment of the rent was improper since he was not in "exclusive use" of the 40-acre parcel, as found by the District Court, and that Jerry also "use[d] the property as needed" and should have been similarly charged with rent. However, Butch's argument here is thin; the District Court's full characterization of Butch's use of the parcel was "*near* exclusive use," (emphasis added), after hearing evidence that, in contrast to Butch's year-round use, Jerry was physically on the property for pregnancy testing and use of the cattle chute for four days, beyond using the pump located on the property to provide water to his cattle. Butch's use was the dominant and almost total use of the property. Further, Butch agreed in his testimony that $15,000, an amount his counsel had originally proposed, was a fair assessment for use of the 40-acre parcel. While a small rent assessment against Jerry may also have been appropriate, it would have been a *de minimis* amount under the circumstances. We hold substantial evidence supports the District Court's determination to assess Butch $15,000 in rent.

---

[5] Butch also states he was double-charged the $15,000 rent, explaining in a footnote that a trial exhibit showed an offset in reaching his capital account balance, before the District Court offset the account for the same expense. However, another calculation on the same exhibit provided a capital account balance for Butch in the same amount, without such an offset. We are at a loss from the record to determine which figure and what reasoning the District Court employed, and the briefing does not sufficiently amplify this possible discrepancy to resolve the question. Thus, we conclude reversible error on this issue has not been demonstrated.

¶26 Butch argues that the District Court failed to credit him for "several improvements on the 40-acre parcel while he lived there and continued to personally pay partnership expenses, such as maintenance, repairs, and property taxes beginning in 2014." However, we conclude the District Court's determination is supported by the record. Butch did not dispute Jerry's evidence of the value of the property at $77,000 based upon an appraisal, and he did not raise a claim for reimbursement of property-related charges until his proposed findings of fact, submitted post-trial. Even then, the evidentiary support for the claims, though referenced by Jerry in his testimony, was weak. We affirm the District Court's determination.

¶27 *3. Did the District Court err by awarding Jerry the 40-acre parcel in its distribution of partnership assets?*

¶28 The District Court determined it was equitable for Jerry to receive the 40-acre parcel upon purchase from the partnership. Specifically, the District Court stated in its findings:

13. Butch believes he should receive the 40 acres in dispute. He lived on the property and raised his family. He has a strong sentimental attachment. In addition, he has used the property since the mediation in May, 2013.

14. Jerry received the rights to a water tap on the 40 acres in the settlement agreement. It provides the only viable water source for Jerry's current cattle operation. He also owns 80 acres just south of the 40 acres.

15. The situation is complicated by the facts that Colby Johns, Butch's son, resides in property adjacent to the 40 acres. There is a tremendous amount of animosity between Jerry and Colby.

16. The best way of avoiding conflicts in the future is if Jerry and Colby have limited contact with each other. If Butch receives the 40 acres, both Jerry and Colby will have access to the property. In the Court's view, this

> may lead to future problems. Therefore, Jerry shall purchase the 40 acres for the partnership for the agreed value of $77,000.00.

In its conclusions of law, the District Court stated, "that the apportionment of assets as set forth in the Findings of Fact is fair and equitable."

¶29 Before equitable considerations, Butch argues, based upon his position that Jerry breached his fiduciary duty and misused partnership funds, that he is a creditor for the amounts owed to him by Jerry and is entitled to an in-kind distribution of the 40-acre parcel to satisfy this debt, citing § 35-10-629(1), MCA, which provides that "the assets of the partnership must be applied to discharge its obligations to creditors," and thereafter, in the absence of an agreement by the partners, assets are liquidated "to pay in cash the net amount distributable to partners in accordance with their right to distributions." *See also McCormick*, ¶¶ 41-45. Jerry answers that the parties agreed to an in-kind distribution of the majority of assets in the settlement agreement, and both urged an in-kind distribution of the 40-acre parcel during the litigation, which the District Court properly granted to Jerry as a matter of equity.

¶30 Partnership agreements control relations among partners. Section 35-10-106(1), MCA; *McCormick*, ¶ 35 (stating that "statutory rules are merely default rules, which apply only in the absence of a partnership agreement to the contrary"); *Krajacich v. Great Falls Clinic, LLP*, 2012 MT 82, ¶ 12, 364 Mont. 455, 276 P.3d 922 (stating that partnership agreements are "essentially" contracts to be interpreted under contract principles). Absent any agreement to the contrary, Montana partnership law mandates liquidation of partnership assets with any surplus being distributed to partners in cash. Section 35-10-

629(1), MCA; *McCormick*, ¶ 45. *See also* § 35-10-407, MCA (stating that "[a] partner has no right to receive and may not be required to accept a distribution in kind").

¶31 Butch's argument here has been largely resolved by our determination that Jerry did not breach his fiduciary duty, and thus Butch is not a creditor of the partnership for that purpose. To the extent Butch's argument is based upon the general rule stated in § 35-10-629(1), MCA, requiring liquidation of partnership assets, it is clear that both parties were in agreement on one point: the 40-acre parcel should be distributed in-kind. That was the implicit understanding within the settlement agreement's in-kind distribution of the vast majority of partnership assets to the partners and was followed by litigation wherein both parties repeatedly pleaded and asked for an in-kind distribution of the property to themselves. Jerry required the parcel to access water for his home and business, obviating the need to commute to Conrad, while Butch displayed sentimental attachment to the parcel since it is where he raised his children. Neither requested liquidation, nor argued liquidation was required. The parties' desire for in-kind distribution is further evidenced by their briefing to this Court. Under these circumstances, we conclude there was no legal error.

¶32 The District Court acted in equity, considering the legitimate claims for distribution of the property made by both brothers, and noting the property's importance to their livelihoods. It expressed concern about the family conflict over its use and the potential for future conflict. Thus, the District Court's decision was grounded in the record and based upon a reasonable premise. A court sitting in equity is authorized to determine "all

15

disputes incidental to the controversy," *Hames v. Polson*, 123 Mont. 469, 477, 215 P.2d 950, 954 (1950) (internal citations omitted), which empowers the court to "do complete justice" and "fashion an equitable result." *Maddox v. Norman*, 206 Mont. 1, 14, 669 P.2d 230, 237 (1983) (citing *Sawyer-Adecor International, Inc. v. Anglin*, 198 Mont. 440, 455, 646 P.2d 1194, 1202 (1982) and *Rase v. Castle Mountain Ranch, Inc.*, 193 Mont. 209, 222, 631 P.2d 680, 687 (1981)). Unless explicitly displaced by statute, equitable principles will supplement Montana's Revised Uniform Partnership Act. Section 35-10-105(1), MCA. We conclude the District Court did not err by granting the property to Jerry upon his purchase for the agreed value.

¶33    Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ INGRID GUSTAFSON

16